SOLOMON M. HOLLIS, *et al.*, v. ISAAC W. BURGESS.

1. SALE OF LAND — *Contract Contained in Letters.*   A valid contract for the sale of land may be embraced wholly in letters written concerning such land; and it is not absolutely essential that the letters should be addressed by one of the contracting parties to the other.

2. STATUTE OF FRAUDS; *Certain Description of Land Sold.*   To answer the requirements of the statute of frauds, the written contract should describe the land sold with certainty; but it is not essential that the description should be given with such particularity as to make a resort to extrinsic evidence unnecessary.

3. WRITTEN CONTRACT, *Enforced.*   Where the land sold is described in the written contract as the "Snow farm," and is commonly designated in the neighborhood where situated, and by all the parties to the contract, by the same name, and the court can without doubt, by the aid of extrinsic evidence, apply the description to the very land intended to be sold, *held*, that such agreement, being otherwise sufficient, will be enforced.

4. ———— *Specific Performance.*   The written agreement for the sale of land relied on in the present case, examined, and *held* to be sufficiently certain, and one which should be specifically enforced.

*Error from Norton District Court.*

ACTION for specific performance of contract to convey real estate.   Trial by the court, at the October Term, 1885.   The court made findings of fact and conclusions of law as follows:

"1. On the 26th day of January, 1885, and for a long time prior thereto, the said Solomon M. Hollis was the owner of the foregoing described land, situate and being in the county of Norton, and state of Kansas, to wit: the southwest quarter of section number twenty-one, in township number two south, of range number twenty-two west.

"2. This tract of land was also called by and known as the 'Snow farm,' by both plaintiff and defendants, at, prior and subsequent to the last-mentioned date.

"3. Said land was subject to a mortgage duly executed upon it, on and prior to said date, and still is so subject, in the sum of six hundred dollars, which remains wholly unpaid.

"4. On said date, and for a long time prior thereto, said Hollis was desirous of selling the land above described, and

other land which he owned in Norton county, Kansas, and had at different times requested one Solomon Marsh, a resident of Norton county, Kansas, and a relation of the said plaintiff, to sell said land for him as his agent, the said plaintiff during all this time, and up to the present time, being a resident of Clay Center, Clay county, Kansas, and therefore unable to personally negotiate a sale of the lands to any parties in Norton county.

"5. On the 17th day of January, 1885, the defendant, Solomon M. Hollis, wrote a letter dated at Clay Center, Kansas, addressed to his agent, Solomon Marsh, at Norton, Kansas, in which letter Hollis stated as follows: 'Wish I could sell I. Burgess my land and stock and tools. I would sell cheaper now than I will ever again, as I am needing money; so if he has any notion of wanting to buy such a place, let him write me his highest figures and best terms.'

"6. This I. Burgess, named in this letter, is the plaintiff named in this case, and defendant Hollis meant plaintiff, when he wrote said letter. The contents of this letter were made known to Burgess by said Marsh in reference to the sale of the land, stock and tools, as stated therein and as above quoted; and in answer to the same, Marsh wrote Hollis a letter dated January 20, 1885, at Norton, Kansas, in which he stated: 'Ike Burgess says that your figures on the land are very much too high for him. He will look at the cattle and let you know soon what he thinks.'

"7. Again on the 22d day of January, 1885, Marsh wrote to Hollis another letter, in which he states: 'I have urged Ike Burgess to buy the Snow place of you, and he told me this morning if I had a mind to write to you an offer for it of $1,200, he would assume the mortgage of $600 and give you $600 in cash in thirty days. I have got his money borrowed for that length of time. Ike is about the only man that I know of that has got the money, and I tell you that they are all after him to get hold of it, that have got land to sell. He is offered a place four miles from town. It is as nice a prairie claim as that Peterson claim that we looked at right north of the Tom Brown land. It has eighty acres broke on it and a good sod house, and he has a strong notion of buying it, but he will not be likely to do anything about it for a few days. Write as soon as you get this.'

"8. In answer to this last letter of Marsh to Hollis, Hol-

lis, on the 23d day of January, 1885, from Clay Center, Kansas, wrote as follows to Marsh:

"'CLAY CENTER, KAS., Jan. 23, 1885. — *Cousin Solomon:* Yours rec'd. I hardly know just what to say about selling Snow place, but I think I would sell at the price, if Ike would keep what stock I may have left from March 1 to July 1. Of course I should sell before July, if I could get a fair price. I will not say that I will sell in this now, as I want to talk with Mrs. Hollis about it, but you or he can write me what he will do.'

"9. Upon the receipt of this letter by Marsh, Marsh read the same to Burgess and acquainted him with the proposition of Hollis about the terms and conditions upon which he, Hollis, would sell the land. Burgess then notified Marsh that he would accept the offer so made by Hollis, and would purchase the land of Hollis according to his terms as stated in this letter, and instructed Marsh to so write to Hollis, which Marsh did, on the 28th of January, 1885. (This last letter was not introduced in evidence, and therefore the court cannot give more than the substance thereof as shown by the evidence.)

"10. In answer to this last letter of Marsh to Hollis, Hollis on the 26th day of January, 1885, wrote as follows:

"'CLAY CENTER, KAS., Jan. 26, 1885. — *Cousin Solomon:* Your postal and letter at hand, and in reply will say that we will sell the Snow place, Burgess to pay $600 within one month and assume the mortgage, and keep my stock from March 1, to July 1, feed to be found until grass; he to salt and look after them and take good care of them. He to have possession March 1, or before if D. Wood is willing. I would like very much if he can pay me $150 or $200 by February 10. I have a note due by that time; have plenty due me, or will have by that time, to pay what I owe, if I can only collect. We will make out deed and put in F. N. bank here, and they send Ike deed when payments are made if this will do. Wood is to have hay and stalks or straw enough on place to keep the stock out to grass. Hope you will be able to sell the other place. I shall look to you somewhat, and expect that you will see that the stock is well kept in case Ike buys.'

"11. Marsh received this letter on the following day, January 27, about 11 o'clock A. M., and about the same time made the contents thereof known to Burgess; and on the same day, by instruction and request of Burgess then given to Marsh, Marsh wrote Hollis the following:

"'NORTON, KAS., Jan. 27, 1885. — *Mr. S. M. Hollis* — Dear Sir: I have just received your letter. Ike excepts your proposition, and with regard to the $150 that you spoke of, he says he will send you $100, and you must try and get along with that till thirty days are up, and then it will be forthcoming, as I have all the money in my possession. If you do not want to send the deed to your agent, please hold it or send it to Norton County bank. You will find inclosed draft for $100. With regard to the stock, I think Ike will take good care of them. I do not think you will lose any more of them unless it is some of the calves at Thompson's. They are very poor, but I will do all I can to have them taken care of.'

"12. On the 27th day of January, 1885, the defendant Solomon M. Hollis and James E. Alsop had a conversation at Clay Center, Kansas, in which Alsop told Hollis he, Alsop, would like to buy all of Hollis's land in Norton county, including the Snow farm, and all the cattle of Hollis in Norton county, Kansas. In this conversation Hollis told Alsop that he expected that he had sold the Snow farm to Isaac W. Burgess; of having sent the letter of the 26th of January, above described, and the terms and conditions of said alleged sale of the land to Burgess; and Hollis and Alsop then and there entered into a verbal agreement that Alsop should purchase of Hollis all the land belonging to Hollis situate in Norton county, Kansas, including the Snow place, and also Hollis's cattle then in Norton county, Kansas. Hollis then, on said day, after having the conversation with Alsop as above stated, sent the following message by telegraph to Marsh:

"'CLAY CENTER, KAS., Jan. 27, 1885. — *To Sol. Marsh, Norton, Kas.:* I have sold my whole property in Norton county, to-day.—[Signed] S. M. HOLLIS.'

"Afterward, and on the same day, Hollis sent Marsh a letter as follows:

"'CLAY CENTER, KAS., Jan. 27, 1885. — *Cousin Solomon:* No doubt but that you have received my telegram before this, and no doubt but that you were very much surprised when you received it. Alsop came down last night to buy me out, and made a good offer and takes land, stock and tools. I held off for quite a while, hardly knowing whether I ought to sell, still wanting to close all out at once. Inasmuch as Burgess had come so near buying another place, even if it was a little disappointment to him, it would not make the difference to him that it would to me. I was anxious to get those cattle off my hands before any more of them should die. For what trouble you have been to to sell for me, send in your bill. Another reason why I rather sell all out, I am getting more money to use and pay up where I am owing, and it will make me feel better. If you have to pay for the dispatch from Edmund over, Alsop is to pay you. Jim says tell you he expects to start for Norton to-morrow night unless too cold. Have not time to write more to-day.'

"13. This dispatch and letter were received by Marsh on the 28th day of January, 1885, and the contents were on said day made known to Burgess. In answer to the dispatch and letter, Marsh wrote to Hollis as follows:

"'NORTON, KAS., Jan. 28, 1885. — *Mr. S. M. Hollis* — Dear Cousin: I have just received your dispatch, and in reply will say that it will be impossible to mend what has been done here with reference to the sale of your land to Ike Burgess. He has already taken possession of the place, David Wood having given his consent for him to take immediate possession. He has a carpenter at work there to-day repairing the house, and positively refuses to give up the place, but is willing to comply with his part of the contract in every particular. I have acted as your agent, and attended to all of your business here in a straightfor-

ward manner, and I don't think it would be right for you to try to dispose of this place to anyone else after having sold it to Burgess. It would not be justice to him or me. I hope you will consider the matter, and make him no trouble about it. With reference to the deed, you can deposit it in the F. N. bank at Clay Center, send it to me, or send it to Norton County bank. We will send all the money directly to you. If it will be any accommodation to have $50 more paid before the 10th of February, let us know, and we will send it before that time, and the balance within the time agreed upon.'

"14. To this letter of Marsh, Hollis, on the 29th day of January, 1885, wrote as follows:

" '·CLAY CENTER, KAS., Jan. 29, 1885. — *Cousin Solomon:* Your three letters received, also draft for $100, which I return to you. I am very sorry indeed to learn that Ike is bound to have place. As I wrote before, I thought inasmuch as he had come within $25 of buying another place, that surely it could be no damage to him, and that you would get my dispatch within about three hours of the letter, and that he would not care but little, if any. Another point I thought perhaps we might not agree upon, that was the interest on the mortgage; there was nothing said about interest. I should not have been willing to pay interest. Again, selling land is different according to law from anything else, as I understand it. There is nothing binding about a sale of land until the papers or deed is signed; you can see just how it is. I was doing so much better to sell all out together — tools and all — that I hardly think you can blame me for what I have done. If Ike has paid for a day's work improving house, if Alsop will not pay that I will. No doubt but that Alsop is out there now, and I hope all will be settled without any hard feelings.'

"15. In answer to this letter, Marsh, on the 30th day of January, 1885, wrote as follows:

" 'NORTON, KAS., Jan. 30, 1885. — *Mr. S. M. Hollis* — Dear Cousin: I have just received your letter and draft for one hundred dollars, which I sent to you on land for Burgess. I shall hold the money as your agent, subject to your order. I also have the other fifty dollars which you requested us to pay by the tenth of February, making one hundred and fifty dollars in all. The balance in full will all be paid within thirty days as we agreed upon. With regard to the matter of interest you speak of, we understood when we agreed to assume that mortgage, that legally we assumed everything connected with it. Burgess has not only done one day's work on the land, but he has done several of them. He has got lawful possession of the place, and expects to hold it without a doubt.'

"16. On the 6th day of February, 1885, by direction of Burgess, and at his request, Marsh sent to Solomon M. Hollis, at Clay Center, the sum of six hundred dollars in a registered letter, which amount was duly received by Hollis as payment for said land, which amount of money the said Hollis deposited in the First National bank of Clay Center, Kansas, subject to the order of Sol. Marsh, where the same now remains.

"17. On the 10th day of February, 1885, Hollis wrote Marsh the following letter:

" ' CLAY CENTER, KAS., Feb. 10, 1885. — *Cousin Solomon:* Yours of the

6th at hand. Having never sold my land to Ike Burgess, the money you sent is in the First National bank of Clay Center, Clay county, Kansas, deposited there subject to the order of Sol. Marsh. You can draw it at any time.'

"All of these letters were signed by the respective writers, and received by the parties in due time, and were all the correspondence and letters sent by the parties in reference to the matter of the alleged sale of the land called the Snow farm. After the conversation had between Solomon M. Hollis and James E. Alsop on the 27th day of January, 1885, referred to in finding of fact No. 12, the said Hollis and Alsop on the same day went into the office of M. M. Whiting, a notary public at Clay Center, Kansas, and had the said Whiting write two deeds; one of these deeds was a conveyance of the Snow farm from Solomon M. Hollis and wife to James E. Alsop; neither of such deeds was signed by Hollis or wife at that time, but such deed was signed and acknowledged by Hollis and wife on the 2d day of February, 1885, and was there delivered to Alsop, and by him filed for record in the office of the register of deeds of Norton county, Kansas, on the 4th day of February, 1885.

"18. Neither Marsh nor Burgess consented to the placing of the said $600 in the First National bank of Clay Center, Clay county, Kansas, subject to the order of Sol. Marsh; nor have they, or either of them, ever in any manner ratified such act, but, on the other hand, recognized and still recognize the same as the property of Hollis.

"19. Upon the receipt of the letter dated January 26, 1885, and set forth in finding of fact No. 10, and after the acceptance thereof, as set forth in finding of fact No. 11, Burgess went into possession of the said land by and with the authority and consent of Sol. Marsh, acting as the agent of Solomon M. Hollis. Burgess went into possession of the said land on the 27th day of January, 1885."

"CONCLUSIONS OF LAW.

"1. Defendant Solomon M. Hollis entered into a definite and certain contract in writing with plaintiff Isaac W. Burgess, in which he agreed to sell to Burgess on certain terms and conditions the southwest quarter of section number twenty-one, in township number two south, of range number twenty-two west, situate in Norton county, state of Kansas, as alleged in plaintiff's petition herein.

"2. Plaintiff promptly made known to Solomon M. Hollis his acceptance of said Solomon M. Hollis's proposal and agree-

ment to sell said land to him through his agent, Solomon Marsh, as well as his willingness and promise to comply with all the terms and conditions of the same.

"3. Isaac W. Burgess has complied with and fully performed all the terms and conditions of said written contract that he was required therein to do and perform.

"4. Solomon M. Hollis, after the making and executing the written contract aforesaid, and after the acceptance thereof by plaintiff Isaac W. Burgess as aforesaid, and in violation of the terms and conditions of the same, sold and conveyed the said land to the defendant James E. Alsop.

"5. James E. Alsop at and prior to the time Hollis conveyed said land to him had full knowledge of the terms and conditions of the written contract entered into by and between defendant Hollis and the plaintiff Burgess in reference to the sale of said land.

"6. Defendants, and each of them, have refused to convey said land to plaintiff according to the terms and conditions of said written contract, although often requested so to do by the plaintiff herein, before this action was commenced, and still so refuse to do.

"7. Solomon Marsh acted as the agent of Solomon M. Hollis in negotiating the sale of said land to the plaintiff Burgess by request of Hollis."

It was accordingly adjudged that the defendant James E. Alsop should convey all of his estate, right, title, interest and claim in and to the land, to the plaintiff Isaac W. Burgess, and that in default thereof this judgment should have the same effect and operation, and that the defendants Hollis and Alsop should pay the costs of the action. The defendants excepted to the foregoing findings of fact and conclusions of law, and also to the judgment, and bring the case to this court for review.

*L. H. Thompson,* and *Sturges, Kennett & Peck,* for plaintiffs in error.

*John R. Hamilton,* for defendant in error.

The opinion of the court was delivered by

JOHNSTON, J.: The letters contained in the findings embody a definite contract to sell the land, and we think the court rightly held it enforceable. The correspondence be-

tween Hollis the owner and Burgess the proposed purchaser was carried on through one Marsh, who to a certain extent acted for each. The letters of Hollis addressed to Marsh relating to the land were intended for, and were communicated to, Burgess, and Marsh acted for Burgess in writing and transmitting his replies to the proposals made by Hollis. This was sufficient. "It is not essential that the letter should be addressed by one of the contracting parties to the other, since the statute of frauds is only concerned with the evidence by which an agreement is to be established." (Pomeroy on Contracts, § 84.) In the correspondence Hollis made a definite

1. Sale of land— contract contained in letters. proposal of the terms upon which he would sell, and Burgess made an unqualified acceptance, and the letters considered together embrace all the essential elements of a completed contract. It is true that the word *except* was used in one instance instead of *accept*, but the connection in which the term was used made it manifest that it was intended to express an acceptance of the proposal. The misspelling of the word did not, and could not, mislead; and in fact the letters themselves show that Hollis understood and treated the term as an expression of assent.

The land which formed the subject of the contract was described in the letters as "the Snow farm," and it is objected that the description is too uncertain. The general doctrine regarding the certainty of description required under the

2. Statute of frauds; certain description of land sold. statute of frauds, contended for by counsel for plaintiffs in error, is not questioned. It is not essential, however, that the description should be given with such particularity as to make a resort to extrinsic evidence unnecessary. If the designation is so definite that the purchaser knows exactly what he is buying, and the seller

3. Written contract, enforced. knows what he is selling, and the land is so described that the court can, with the aid of extrinsic evidence, apply the description to the exact property intended to be sold, it is enough. (Fry on Specific Performance, § 209; Pomeroy on Contracts, § 90.) The property in controversy was commonly designated as the "Snow farm."

It was so known and spoken of by all the parties at the time of the negotiations, as well as before and since that time. The description could be connected with the land without difficulty, and no doubt or dispute could arise regarding either its location or extent. Other objections for uncertainty are made to the mortgage which Burgess was to assume, and the stock which he was to keep for Hollis from March 1 to July 1 of that year. The plaintiffs in error inquire, What mortgage and what stock were intended ? The correspondence clearly denotes that the mortgage referred to was a $600 mortgage on the land, and from anything that appears in the record it was the only mortgage existing against it. This mortgage Burgess unconditionally assumed, and in doing so assumed the payment of all the debt which it represented and secured. It was shown and found at the trial that the land was subject to a $600 mortgage which had been duly executed upon it prior to the date of the contract, and that the mortgage at that time remained due and wholly unpaid. In respect to the stock, they are referred to throughout the correspondence as those belonging to Hollis, and which were being wintered in that locality. In one of the letters written by Hollis during the negotiations, and which contained a proposal to Burgess, the stock which he desired to have cared for are alluded to as all that he had left there. On the whole, we think that the identity of the stock intended was sufficiently definite.

A final objection on that ground was, that the deed was to be placed in the "F. N. bank," of Clay Center. From the letters there can be no doubt but that the First National bank of Clay Center was the one referred to. Besides, the person or bank through whom, or the method by which, the deed should be sent to Burgess, can scarcely be regarded as an essential or substantive feature of the contract; and only such need to appear on the face of the writing required by the statute. We are of opinion that the letters stated the parties to the agreement, the subject of sale, and the terms of sale, with such certainty as to furnish evidence of a complete agreement. But if they failed to meet the requirements of the

statute, Burgess must still prevail. It appears that after the contract was made he immediately went into possession of the land, and he had made lasting and valuable improvements thereon before he learned of the attempted repudiation of the contract by Hollis. The possession was taken and the improvements made in pursuance of the agreement; and in addition to this, he made a partial payment of $100 to the agent of Hollis. These acts were performed on the faith of the agreement that had been made, and constituted such a part performance as would take the case out of the statute of frauds. (*Edwards v. Fry*, 9 Kas. 417.) Having complied with all the conditions of the contract, Burgess is entitled to a specific performance. The judgment rendered, however, must be modified in one particular. The contract was made by Hollis without his wife joining him in it, and only the contract made can be enforced. The inchoate interest of the wife was not included in the agreement, and the judgment should be so entered as to protect that interest. (*Gray v. Crockett*, 35 Kas. 66, 686.) When so modified, the judgment will be affirmed.

4. Specific performance.

All the Justices concurring.