CHARLES J. ROSS v. KATE H. ALLEN.

MEMORANDUM, *Indefinite — Contract — Specific Performance, Not Enforced.* The following is a memorandum of an alleged contract for the sale of lots numbered 23 and 24, in block 74, in Leavenworth city proper, in the county of Leavenworth and State of Kansas, by Kate H. Allen to Charles J. Ross, viz.: "LEAVENWORTH, March 19, 1887. Received one hundred dollars of Mrs. D. Byington, account of Chas. J. Ross, to apply on payment of eight thousand dollars ($8,000), for property number 617 and 619, Delaware street, block 74, city proper, two thousand to be paid when abstract and title is furnished, two thousand in ninety days, and balance two years, with interest at 8 per cent., abstract to be furnished within 30 days. J. M. ALLEN, Agent." J. M. Allen was not the agent of Ross, and the memorandum was not signed by Ross, or by any one for him, and he did not by any other writing recognize or adopt the contract. In an action against Ross for specific performance, it is *held*, that the memorandum was vague, indefinite, and insufficient within the requirements of the statute of frauds, and that the contract is not such as can be specifically enforced.

*Error from Leavenworth District Court.*

ACTION to specifically enforce the performance of a contract alleged to have been entered into between the parties on or about the 19th day of March, 1887, by which *Charles J. Ross* purchased lots 23 and 24, in block 74, in Leavenworth, Kansas, for the sum of $8,000. The written agreement set up by *Kate H. Allen* in her petition to sustain the cause of action is as follows:

"LEAVENWORTH, March 19, 1887.

"Received one hundred dollars of Mrs. D. Byington, account of Chas. J. Ross, to apply on payment of eight thousand dollars, for property number 617 and 619 Delaware street, block 74, city proper; two thousand to be paid when abstract and title is furnished; two thousand in ninety days, and balance two years, with interest at 8 per cent. Abstract to be furnished within thirty days.     J. M. ALLEN, *Agent.*"

The plaintiff below further alleged that she had duly performed the terms of the contract upon her part so far as she could, and still stood ready to keep and perform the same, but that the defendant had failed, neglected and refused to perform the contract upon his part in every respect. At the trial, the following findings of fact and conclusions of law were made and stated by the court:

"FINDINGS OF FACT.

"1. That on, before and since the 19th day of March, 1887, Kate H. Allen, the plaintiff, was a married woman; that her husband's name was Harvey Allen; that ever since A. D. 1862, Kate H. Allen has been the owner in fee simple of lots 23 and 24, in block 74, in the city of Leavenworth proper, in the county of Leavenworth, in the state of Kansas; that on the 19th day of March, 1887, Kate H. Allen was the owner of said lots in fee simple, clear, free and unincumbered of record; that on, before and since said 19th day of March, 1887, James M. Allen was the duly-authorized agent of Kate H. Allen in and about the sale of said lots, and on said 19th day of March, 1887, said James M. Allen, by the name of J. M. Allen, and as agent of Kate H. Allen, entered into an agreement for the sale of said lots 23 and 24, in block 74,

Leavenworth city proper, Leavenworth county, Kansas, with the defendant, Charles J. Ross, and thereupon the said Charles J. Ross paid on such purchase the sum of $100 in cash, to said J. M. Allen, and thereupon said J. M. Allen, as agent for Kate H. Allen, signed and delivered to said Charles J. Ross a written memorandum in words and figures following:

'LEAVENWORTH, March 19, 1887.

'Received one hundred dollars of Mrs. D. Byington, account of Chas. J. Ross, to apply on payment of eight thousand dollars, for property number 617 and 619 Delaware street, block 74, city proper; two thousand to be paid when abstract and title is furnished; two thousand in ninety days, and balance two years, with interest at 8 per cent.; abstract to be furnished within thirty days. J. M. ALLEN, *Agent.*'

"That said Charles J. Ross, immediately upon the receipt of said memorandum, caused the same to be recorded in the office of register of deeds in and for Leavenworth county, Kansas; that the property described in said memorandum and intended to be by said Allen and Ross is lots 23 and 24, block 74, in Leavenworth city proper, in the county of Leavenworth, in the State of Kansas.

"2. On the 26th day of March, 1887, Kate H. Allen and her husband, Harvey Allen, executed and acknowledged in due form of law their warranty deed to said premises, with full covenants of warranty to Charles J. Ross, and delivered the same to their agent, J. M. Allen, to be by him delivered to Charles J. Ross, under and in pursuance of the contract of purchase of said lots; and on said day said plaintiff caused a mortgage and notes to be prepared and sent to said Charles J. Ross by his directions for execution, which notes were copied in the mortgage, and of which mortgage and the notes copied therein the following is a copy, to wit: . . . The said notes and mortgage were sent to said Charles J. Ross at his request by J. M. Allen, to be executed, and were received by said Charles J. Ross and by him retained and produced upon the trial of this case.

"3. On or about the 29th day of March, 1887, an abstract of title to said lots was procured from Messrs. Spalding & Bowen, abstracters, etc., by J. M. Allen, agent of Kate H. Allen, and delivered by him under instructions from Charles J. Ross, to John Sorenson, who then and there, as the agent of Charles J. Ross, delivered the same to W. C. Hook, a practicing attorney of Leavenworth, to examine and

report upon to Charles J. Ross, which said Hook did on the 11th day of April, 1887, as will more fully appear by a copy of the following letter:

'LEAVENWORTH, KANSAS, April 11, 1887.

'*Mr. Chas. J. Ross, Iatan, Mo.*— DEAR SIR: I have examined the abstract of title to lots 23 and 24, in block 74, in Leavenworth city proper, furnished by Spalding & Bowen, dated March 28, 1887. The patents from the United States to Charles Trowbridge to these lots should be procured from the land office at Washington and recorded in this county by Mrs. Allen. An affidavit should also be procured that C. E. Trowbridge, who made the deed to John Kerr of these lots on April 10, 1862, is the Charles Trowbridge, the patentee, and also that he was an unmarried man at the time he made the deed. With these exceptions, I believe the title to be clear in Kate H. Allen.' Respectfully,

WILLIAM C. HOOK.'

"Said letter and said abstract both referred to and showed that the title to said lots was in Kate H. Allen, and said letter and abstract were sent by said Hook to said Charles J. Ross on the 11th day of April, 1887, and within a short time after their receipt said Charles J. Ross delivered said letter and said abstract to J. M. Allen, who at once proceeded to obtain copies of the patents to said lots, and recorded the same, also to obtain the affidavits required in said letter, and completed all such matters on or before the 28th day of April, 1887.

"4. On March 28, 1887, a letter, of which the following is a true copy, was written by J. M. Allen, agent, etc., to Charles J. Ross, and was sent to and received by said Charles J. Ross:

'LEAVENWORTH STATION, March 28, 1887.

'*Chas. J. Ross, Iatan, Mo.*—MY DEAR SIR: I herewith send you the mortgage and notes for signatures, which you can have signed and also acknowledged up there. Please have both mortgage and notes signed by your wife and yourself. The abstract will be completed Thursday noon, and if you cannot come down yourself, you can send the mortgage and notes, and money for first payment, to Jno. Sorenson, and we will deliver the warranty deed, also the abstract, to him to be forwarded to you.

'Hoping this will find your family improved in health,

'I am, very truly yours, J. M. ALLEN, *Agent.*

'N. B.—Will you please sign the notes and mortgage according to the copies of the notes embraced in the body of the mortgage, viz.: Charles J. Ross, Nannie B. Ross, and oblige,　　　　　　　　　　　　　　　J. M. A.'

"On the 5th day of April, 1887, J. M. Allen, as agent for Kate H. Allen, wrote and mailed another letter to said Charles J. Ross, which said letter was duly received by said Ross, a copy of which is in the words and figures following:

'LEAVENWORTH STATION, April 5, 1887.

'*Chas. J. Ross, Iatan, Mo.*—DEAR SIR: Your favor of the 4th received this A. M. In reply, I would say, everything is in shape here. I gave the abstract complete to your friend Mr. Sorenson, several days ago. Of course, under the circumstances, I don't like to try to hurry you, but we really need the money now. In fact, if we hadn't needed the money the property wouldn't have been in market, as it lies directly in the line of improvement. I trust, therefore, you will have the papers up there fixed up as soon as you can without serious inconvenience. Please let me know about what day I can count on the money, so I can arrange with the party we owe to wait, and greatly oblige,　　　J. M. ALLEN, *Agent.*'

"On April 28, 1887, a letter, of which the following is a copy, was written by J. M. Allen, agent, to and received by said Charles J. Ross:

'LEAVENWORTH STATION, April 28, 1887.

'*Chas. J. Ross, Iatan, Mo.*— DEAR SIR: I did not go to see you again Tuesday, therefore by not getting that check I missed the chance to get the place I told you about. Consequently, I will have to rent of you, I suppose. The party who is living in the little house is going out on the 1st, but I have a customer for it who will take it at $12 per month. I will pay you $18 for the one I live in, if that will be satisfactory. All this, however, has nothing to do with the original agreement that the balance of the first payment was to be made when abstract was completed and title proven. This is to notify you that same is now completed and recorded as per directions in note of your attorney. I wish, therefore, you would come over to-morrow or Saturday, so we can fix things up and start in O. K. May 1st.

Yours truly,　　　　J. M. ALLEN, *Agent.*'

"Written across the face of the letter was: 'If you want the mortgage and notes changed, bring them along.' Said Charles

J. Ross, by the name of C. J. Ross, answered said letter of April 28, on May 4, 1887, a copy of which is as follows:

'IATAN, MISSOURI, May 4, 1887.

'*J. M. Allen, Esq.*— DEAR SIR: Do not know when I will be in Leavenworth. Mr. Sorenson does not think he can take half of the property at present, and this throws me considerable off track. I will try to be in Leavenworth before long.                Yours truly,           C. J. ROSS.'

"On May 7, 1887, J. M. Allen, agent, sent a letter to Charles J. Ross, which was by him duly received, a copy of which is as follows:

'LEAVENWORTH STATION, May 7, 1887.

'*Chas. J. Ross, Iatan*—DEAR SIR: Your favor of the 4th I have just read. Found the same here when I got back from trip I referred to. Relative to your answer would say, the business between yourself and Mr. Sorenson of course I know nothing about. In fact, that has nothing to do with the case. We did not know Mr. Sorenson in the trade at all. He had nothing to do with it, except that he told me that Mr. Ross's word was just as good as gold. Now I, as the authorized agent of the property, sold you the place in good faith, and I expect, as Mr. Sorenson says you are a man of integrity, that you will come over and fix the business up. I have had several chances to sell the property since you bought it, and in one instance for more money. I would like to have you come over right off so the business can be brought to a close. We are paying interest on money which we can stop of course, at least a part of it. That really was the object in selling the place, otherwise we could and would have kept the property and made the profit of it ourselves. You got the property very low, and could well afford to pay all cash if you wished to, at least Sorenson said so. He seems to have the utmost confidence in your ability. Let me know by return mail what day you will come over, so I will be sure to be here, and oblige        J. M. ALLEN, *Agent.*'

"On May 17, 1887, J. M. Allen, agent, wrote a letter to Charles J. Ross, which was duly received, a copy of which is as follows:

'LEAVENWORTH STATION, May 17, 1887.

'*Chas. J. Ross, Iatan, Mo.*— DEAR SIR: I wrote to you about two weeks ago, but have received no reply. It seems to me that it is hardly the way for a man of business integrity to act. Common courtesy would entitle a business letter to a

prompt reply. Now, what I want to know is this: Are you coming down to complete your contract, or not? I am tired of fooling with it, and want you to come and fix up the business some way or other. I am willing to do what is fair and honorable at all times, and expect the same kind of treatment in return. I shall be at home all this week, and expect to see you down before Sunday. Very resp'y,

J. M. ALLEN, *Agent.*'

"On July 12, 1887, said J. M. Allen, agent, sent to Charles J. Ross a letter, which was duly received, a copy of which is as follows:

'LEAVENWORTH STATION, July 12, 1887.

'*To Chas. J. Ross, Iatan, Mo.*—DEAR SIR: I want to see you about that lot business. If you don't expect to be in Leavenworth soon, I will come up there so we can talk the matter over. Please advise me by return mail when you will be down, or if you are not coming down, let me know what day next week you will be at home. If you will be at home Sunday next I will be there. Can you meet me at Iatan or Weston? If so, I would be glad, as it is very difficult to get a team at Iatan to take anyone out to your place. Now, Mr. Ross, don't fail to answer me at once and let me know where and on what day I can meet you, and perhaps we can succeed in fixing up the matter. I will meet you at Iatan or Weston Sunday or Monday next, just as you say, or if you can't do that I will come out to your place, if you will tell me what day to come. Yours very truly,

J. M. ALLEN, *Agent.*'

"On July 16, 1887, said Charles J. Ross, by the name of C. J. Ross, wrote a letter to J. M. Allen, which was duly received, a copy of which is in the words and figures following:

'IATAN, MISSOURI, July 16, 1887.

'*J. M. Allen, Esq.:* Yours of the 12th received to-day. In regard to the lots will say: I hold no claim on them, and have nothing to show against them, as the receipt I hold was not signed by the owner, nor the number of the lots specified, and can therefore in no way inflict on the title, and the owner can do with the property as they see best. If any particular is wanted, write me at once, and I will reply or come down soon. Yours resp'y, C. J. ROSS.'

"On July 20, 1886, J. M. Allen, agent, wrote and sent a

letter to Charles J. Ross, which was duly received, a copy of which is in the words and figures following:

'LEAVENWORTH STATION, July 20, 1887.

'*C. J. Ross, Iatan, Mo.*—DEAR SIR: Your letter of the 16th duly received. In regard to the lot business, I think you have acted very strangely. If you did not want to take the property, you should have said so long ago, and I think now, you should come down right away, so we can get the business in shape. I wish you would let me know what day you will be down, so I will be sure to be at home. When I get out of this business, I think I will let real-estate deals strictly alone hereafter. Please answer immediately as to the matter, and oblige,                J. M. ALLEN, *Agent.*'

"5. From the 19th day of March, 1887, up to and until July 26th, 1887, said J. M. Allen, at several different times, saw said Charles J. Ross in the city of Leavenworth, Kansas, and at such times urged him to go on and complete the purchase of said lots, and at several times before the institution of this suit, tendered him the aforesaid warranty deed herein referred to, executed by the plaintiff and her husband on the 26th day of March, 1887, and demanded as conditions of the delivery of said deed the payment of $1,900, and the execution of the notes and mortgage aforesaid, which the defendant refused to do. Said Charles J. Ross, at none of said conversations, made any objections to the terms of said purchase, or to the terms of the notes and mortgage so made as aforesaid, but claimed that he could not take said lots because one John Sorenson had gone back on him and would not take or pay for one-half of the purchase-price of said lots; that said Charles J. Ross did not at any of the various times when the warranty deed was tendered as aforesaid, by said J. M. Allen, make any objections to the said deed, or to the said sale or the terms thereof; nor did he ever offer to perform the contract upon his part. At the times said deed was so tendered by said J. M. Allen, he expected said Charles J. Ross to perform said contract upon his part, and expected said Charles J. Ross to deliver to him said notes and mortgage so prepared as aforesaid. And said Charles J. Ross never at such times offered to receive said deed or to pay the balance due, and no question was ever made by said Charles J. Ross as to the tender so made by said Allen until the trial of this cause. Said plaintiff, on the trial of this cause, brought said deed

into court for said defendant, and again tendered the same to said Ross, and demanded a performance of said contract upon his part according to the terms thereof.

"The court finds that on July 19, 1887, there was due to the plaintiff from Charles J. Ross, the sum of $3,900, as part of the purchase-price of said lots, and that the balance of the purchase-price of said lots, to wit, $4,000, became due and payable on or before the 19th day of July, 1889, with 8 per cent. per annum interest thereon; that the rental value of said premises up to this date and chargeable to and against this plaintiff, is the sum of $300, and that said sum should be deducted from said $3,900, leaving due the sum of $3,600, with 7 per cent. per annum interest from July 19, 1887, until paid."

"CONCLUSION OF LAW.

"And as conclusion of law from the foregoing facts, the court finds that the agreement to purchase the said lots 23 and 24, in block 74, in Leavenworth city proper, in Leavenworth county, Kansas, heretofore made by and between the plaintiff and defendant, should be specifically enforced, and that judgment should be entered accordingly."

Judgment was given in favor of the plaintiff: First, that she should recover from Ross the sum of $3,795, with interest thereon from the rendition of the judgment until paid, at the rate of 7 per cent. per annum, together with costs; second, that Ross should execute and deliver his promissory note in writing to the plaintiff for the sum of $4,000, payable on or before July 19, 1889, at the option of the defendant, with 8 per cent. per annum interest from July 19, 1887, until paid. It was further ordered and adjudged that Ross should execute, acknowledge and deliver to the plaintiff a mortgage deed upon the lots within ten days of judgment, and in case of his failure to do so, the judgment should stand as a mortgage lien upon the premises. And it was further ordered that the deed mentioned in the findings of fact should be delivered to the clerk of the court, to be by him delivered to the defendant upon payment of the said sum of $3,795, with interest and costs, and the delivery to him for the use and benefit of the plaintiff of the note and mortgage herein mentioned.

*Ross* excepted to the findings and judgment, and brings the case here for review.

*J. W. Coburn,* and *Waggener, Martin & Orr,* for plaintiff in error.

*Lucien Baker,* for defendant in error.

The opinion of the court was delivered by

JOHNSTON, J.: The defense made against a specific performance is, that the memorandum or evidence of the contract of sale is insufficient within the statute of frauds. Under the statute no action can be brought to charge a party upon a contract for the sale of land unless the agreement upon which the action is brought, or some note or memorandum thereof, shall be in writing and signed by the party sought to be charged, or by his or her agent lawfully authorized. (Gen. Stat. of 1889, ¶ 3166.) The only memorandum of agreement set up in the petition as a basis for plaintiff's action is the following:

"LEAVENWORTH, March 19, 1887.

"Received one hundred dollars of Mrs. D. Byington, account of Chas. J. Ross, to apply on payment of eight thousand dollars for property number 617 and 619 Delaware street, block 74, city proper; two thousand to be paid when abstract and title is furnished; two thousand in ninety days, and balance two years, with interest at 8 per cent. abstract to be furnished within thirty days. J. M. ALLEN, *Agent.*"

Ross contends that this receipt or memorandum is defective in many respects, and wholly insufficient as a basis for the action: (1) It is not signed by the party sought to be charged, nor by any other person lawfully authorized for him. (2) No vendor is named in the receipt relied on. While signed by J. M. Allen, agent, yet the identity of the person for whom Allen was acting cannot be ascertained from the memorandum. (3) The writing does not describe Ross as a vendee or purchaser. (4) The memorandum does not upon its face import an agreement or contract for the sale of any property. It is a mere receipt for money and a memoran-

dum of another payment to be made by installments, upon some property mentioned therein. (5) The writing does not describe lots 23 and 24, in block 74, in Leavenworth,•nor any other real estate, but only refers to street numbers in some city not named. (6) It does not definitely appear from the writing when, where or how the installments were to be paid, nor what installments should bear interest, nor what was the entire purchase-price, and there is no mention of any promissory note or mortgage, both of which the court required the defendant below to give.

Under the decisions of this court, we think the memorandum relied on is clearly insufficient. It does not contain the essential elements of a contract which can be specifically enforced. To be sufficient, the memorandum or writing should designate the parties to the contract, give a sufficiently clear description of the property so that it can be identified; the price to be paid or other consideration to be given, together with the terms and condition, should be stated; and the party to be charged, or his agent, must have signed the memorandum or writing. "While the form of the memorandum is not material, it must state the contract with reasonable certainty, so that the substance can be made to appear and be understood from the writing itself, or by direct reference to some extrinsic instrument or writing, without having recourse to parol proof." (*Reid v. Kenworthy,* 25 Kas. 701.) The writing is obviously vague and indefinite, both with respect to the parties and the character and description of the property sold. Who was the vendor? For whom was J. M. Allen acting? Was he the agent of Byington, Ross, or some unnamed person? Would not anyone infer, looking at the memorandum alone, that Byington and Ross were the parties to the transaction, and that Allen was the agent of the latter? It is conceded, however, that Allen was not the agent of Ross; and if the writing had been signed by Ross, probably the agency of Allen might have been shown by parol testimony, although the principal's name was not disclosed by any writing. While both parties need not sign the writing or writings, they must in some way

16 — 45 KAS.

show who are the parties to the contract. "The contract necessarily embraces two parties, each contracting with reference to the real estate—either of whom may be charged upon the contract, if the contract or some note or memorandum thereof is reduced to writing and signed by such party; but neither of whom can be charged, unless the contract or some note or memorandum thereof is reduced to writing and signed by the party to be charged. The contract, note or memorandum must in all cases be in writing; it must in all cases be signed by one of the parties, and must in all cases be signed by the party who is eventually to be charged upon it." (*Becker v. Mason*, 30 Kas. 701; *Grafton v. Cummings*, 99 U. S. 100.) The memorandum is not signed by Ross, nor by any one for him, and the omission of this essential is of itself sufficient to defeat the maintenance of the action.

Then, again, the property is not described with sufficient certainty. It is true that an absolutely accurate description of the property is not required, but the property should be so explicitly described that it will be susceptible of identification by reference to other writings and facts which may be shown to the court. If the designation is so definite that the description given in the memorandum can, with the aid of extrinsic evidence, be applied to the exact property intended to be sold, it is enough. (*Hollis v. Burgess*, 37 Kas. 494.) In this case, however, the memorandum does not show that the property is located in any state, county, or city. The memorandum itself is dated at Leavenworth, and the property is described as being on Delaware street of some "city proper." If the name of the owner or vendor had been given, it would have aided in the identification of the property; but her name nowhere appears in the writing.

Then, again, there is no certainty upon the face of the writing whether the property sold was real or personal. Only street numbers are mentioned, and it now appears that those are not the ones by which the real estate in question is de-scribed. The property is not described as lands, lots, or real estate, and the street numbers may be attached to buildings

which may or may not be a part of the real estate. The writing is vague and uncertain with respect to the terms and conditions of the contract, and nothing appears therein with reference to the promissory note and mortgage required, or to any other security for the deferred payments. Although no other writing than the one set out was mentioned in the pleadings, the plaintiff below introduced in evidence and relies to some extent on certain correspondence between the parties. The writings relied on should have been set out in the pleadings, but we have overlooked that objection, and find that the correspondence does not recognize or supplement the memorandum pleaded, so as to make complete evidence of a contract within the statute. The evidence of a contract may be gathered from several writings or letters, but their relation to each other should appear upon their faces, and cannot be established by parol evidence. While the memorandum may consist of several parts, all of them must be either physically connected or by direct reference made in one to the other make up the entire agreement of the parties. The letters relied on to supply the essential features omitted from the memorandum should distinctly recognize and adopt the contract. Quite a number of letters were written to Ross, but only two were written by him. One was the letter of May 4, 1887, which we think contains no recognition or affirmance of the contract which supplements or aids the memorandum of March 19, 1887; and the letter written by him on July 16, 1887, is an explicit disavowal of any contract relation and that he has any claim or interest in the property in controversy. There was no part performance by Ross to take the case out of the statute of frauds, and taking the memorandum and writings together, they are insufficient to satisfy the requirements of the statute. No application has been made to reform the contract so that it shall contain all the terms and conditions of sale, and as it now stands, the written evidence of the contract is indefinite, uncertain, and insufficient to sustain an action for specific performance. (*Reid v. Kenworthy*, 25 Kas. 701; *Becker*

Specific performance, not enforced.

*v. Mason*, 30 id. 701; *Fry v. Platt*, 32 id. 62; *Brundige v. Blair*, 43 id. 364; *Sherburne v. Shaw*, 1 N. H. 157; *Bailey v. Ogden*, 3 Johns. 399; *Shipman v. Campbell*, 44 N. W. Rep. 171; *Nichols v. Johnson*, 10 Conn. 192; *Fry*, Spec. Per., 245.)

The judgment of the district court will be reversed, and the cause remanded with instructions to enter judgment upon the special findings in favor of the plaintiff in error.

All the Justices concurring.