C. W. HEROD, *Appellee*, v. W. O. CARTER, *Appellant.*
No. 15,989.

### SYLLABUS BY THE COURT.

1. TAX DEEDS—*Description of the Land.* The statutory rule for interpreting and applying descriptions of property conveyed in tax deeds is that "any description of land which shall indicate the land intended with ordinary and reasonable certainty, and which would be sufficient between grantor and grantee, in an ordinary conveyance, shall be sufficient."

2. ——— *Description of the Land—Extrinsic Evidence.* The law does not require that a description of land in a tax deed shall be so complete that a resort to extrinsic evidence to determine the identity or location of the land intended shall be unnecessary.

3. ——— *Same.* To apply a defective or doubtful description and identify the property conveyed the court may look to facts and circumstances suggested by the defective description, such as the record of the tax proceedings under which the property was sold and conveyed, and in aid of the defective description may also look to the acts and conduct of the parties concerned showing identification or a practical location of the property intended.

Appeal from Finney district court; WILLIAM H. THOMPSON, judge. Opinion filed December 11, 1909. Reversed.

*Orla H. Foster, Fred J. Evans,* and *Fred S. Dunn,* for the appellant.

*Chauncey C. Brown,* and *Milton Brown,* for the appellee.

The opinion of the court was delivered by

JOHNSTON, C. J.: This was an action brought by C. W. Herod to recover from W. O. Carter a parcel of land in Garden City which was sold for taxes in 1896 and which was conveyed by tax deed to E. M. Hatcher on February 12, 1900. Hatcher transferred the lot to Carter in 1902, and since that time Carter has held

possession of, and made improvements upon, the lot. The only serious attack made upon the tax deed is that it is so indefinite in the description of the property conveyed as to render it absolutely void. On its face the deed is otherwise fair, and, having been of record more than five years when the action was begun, it is entitled to the favorable presumptions that go with age. The property was sold and conveyed under this description: "The third 25-foot lot from the north side of lot 7, in block 27, in J. A. Stevens's addition to the city of Garden City, situated in the county of Finney, in the state of Kansas." In the record is the following plat, or diagram, of the property in controversy and surrounding lots, as derived from maps and plats introduced in evidence:

As will be observed, the south part of block 27 was not platted into 25-foot lots. The southwest quarter of the block was left undivided and was designated as lot 7, while the northwest quarter of the block was divided into lots twenty-five feet wide, fronting Main street, and numbered 1, 2, 3, 4, 5 and 6. The lot in controversy is a part of lot 7, lying parallel with lots numbered 1, 2, 3, 4, 5 and 6, fronting on Main street, and is fifty feet south of the north side of lot 7. It is described as "the third 25-foot lot from the north side of lot 7, in block 27," etc., and does not state that it is the third 25-foot lot south of the north side of lot 7. It is contended that as the southwest quarter of the block is itself designated as lot 7, the third 25-foot lot from the north side of lot 7 must be lot 4 of that block. Lot 4, however, had a particular description of its own, which would naturally have been used in describing it in an instrument or in any tax proceeding. The failure to state whether the lot conveyed lies north or south of the north side of lot 7 makes the description ambiguous, but is it so indefinite and uncertain as to be void? Descriptions of land are rarely, if ever, absolutely complete. Something more than the terms used in the description is generally necessary to locate or identify the land conveyed. The simplest descriptions, for instance, such as refer to section corners or lines to lots or blocks, must be ascertained from something outside of the description itself. Descriptions, it has been said, do not identify lands, but simply furnish the means of identification. (*Powers v. Scharling,* 64 Kan. 339.) The statute prescribing the rule for interpreting and applying descriptions in tax deeds reads:

"In all advertisements, certificates, papers or proceedings relating to the assessment and collection of taxes and proceedings founded thereon, any description of lands which shall indicate the land intended with ordinary and reasonable certainty, and which

would be sufficient between grantor and grantee, in an ordinary conveyance, shall be sufficient." (Gen. Stat. 1901, § 7696.)

As between grantor and grantee in an ordinary conveyance it is not essential that a description shall be so particular and complete that a resort to extrinsic evidence shall be unnecessary. It has been said that "the law will not declare a deed void for uncertainty when the light which contemporaneous facts and circumstances furnish renders the description definite and certain." (*D. M. & A. Rly. Co. v. Lockwood,* 54 Kan. 586, 591. See, also, *Seaton v. Hixon,* 35 Kan. 663; *Hollis v. Burgess,* 37 Kan. 487; *Abercrombie v. Simmons,* 71 Kan. 538.) For the purpose of applying the defective description and identifying the property conveyed the court may look to other facts and circumstances suggested by the description. Resort may be had to the tax proceedings, as well as the conduct of the parties in connection with the use and control of the ground. It appears that there had been a practical subdivision of lot 7 into strips of ground twenty-five feet wide, which fronted on Main street. Testimony was offered to show that Herod had paid taxes on the lot in controversy when it was carried on the tax rolls under the description given in the deed. Testimony was also offered to prove that all of the property in the block other than that in controversy was taxed under other descriptions. An examination of the tax proceedings disclosed that lot 4, in the northwest part of the block, was not the one described in the tax deed and other proceedings, as it was then taxed under its own name, and the third lot from the north side of lot 7 must therefore have been the one lying south of that line. This is affirmed by the fact that every other part of the block had been taxed under a description of its own. In the tax-sale notice, under the column of "Names," the lot was described as "Unknown," and under the column "Lot" it was entered

as "third 25-foot lot from the north side under lot 7, block 27." Guided by the description in the tax proceedings and the deed, Carter located and took possession of the lot and made improvements upon it. Under the same description he has since paid the taxes on the lot. All the parties interested in the lot and connected with its transfer have recognized the description as applicable to the lot in controversy. The original owner paid the taxes under that description, the taxing officers and the county used the same description in taxing, selling and conveying the lot, and the purchaser has identified and paid taxes upon the lot under the same description. In *Comm'rs of Jefferson Co. v. Johnson,* 23 Kan. 717, where the validity of a tax deed was challenged because of uncertainty in description, it was held:

"If such descriptions are sufficiently definite to designate the land by the aid of surrounding circumstances, or if they can be made sufficiently definite by the aid of matters or things had in contemplation by the parties, then such descriptions will be held to be sufficiently valid, although they might be considered slightly defective if viewed by themselves alone or without the aid of auxiliary circumstances." (Page 722.)

There, too, it was deemed to be proper to refer to the tax proceedings for the purpose of identifying the land. It was said of the owner who was attacking the description: "Hines owned the land and knew that it was taxable; he knew that it had previously been taxed by this description; and he ought to have known that it was so taxed at this time. At this time, it was taxed by this description, and was not taxed by any other description." (Page 723. See, also, *Douglass v. Byers,* 69 Kan. 59.) So, here, Herod owned the lot and knew that it was taxable. He knew that it had previously been taxed by that description, and had paid the taxes on the land under that description. He was aware of the fact that it was not taxed under any

other description, and therefore could not have been misled. If the facts in the case are in accordance with Carter's offers of proof, it would appear that none of the interested parties had any difficulty in identifying the property, and from the description in the tax deed, aided by the tax proceedings and the surrounding circumstances proposed to be shown, it can not be held that the deed is void for uncertainty in description.

The other objections to the validity of the deed are not substantial. On the question that Hatcher was the agent of Herod and that his purchase at the tax sale was no more than a payment of taxes there is an adverse finding of the trial court, as Carter was awarded the taxes paid by Hatcher, and on the evidence it can not be said that the finding was wrong.

There is a further claim that the evidence in the case can not be reviewed because maps and plats introduced in evidence are not properly preserved in the record. The maps and plats referred to, so far as they were pertinent to show the property in controversy and the adjoining blocks, were preserved in the diagram, or plat, which is reproduced in the record. Much in the maps and plats introduced was foreign to the inquiry here, and the composite plat which the court settled as a part of the case-made is a sufficient reproduction of them for the purposes of this review.

An examination of the testimony received and that offered leads to the conclusion that there was error in holding the deed to be so indefinite as to be void. As a part of the circumstances considered, however, were only embraced in offers of proof which were not received by the court, it follows that judgment can not be ordered, but that there must be a reversal and a new trial.