## MARLAND v. GILLESPIE.

No. 21180. March 13, 1934.

Rehearing Denied May 22, 1934.

Application to File Second Petition for Rehearing Denied June 5, 1934.

Maris & Maris, for plaintiff in error.

John S. Burger and Irby & Carver, for defendant in error.

BAYLESS, J. E. W. Marland, plaintiff below; appeals from a judgment of the district court of Kay county, Okla., in favor of the defendant below, Minnie Gillespie, quieting her title to certain real estate. The parties will be referred to herein as plaintiff and defendant, respectively, as they appeared in the trial court.

There is no dispute over the actual events out of which this litigation arose. The controversy revolves around a determination of the legal rights of the parties now that such events have taken place.

Hans C. R. Brodboll acquired title to the northeast quarter of section 27, T. 26 N., R. 2 E., in what is now Kay county, Okla., from the United States government by a patent dated February 18, 1898. He executed a conveyance of a strip of this land along the north side of this quarter section to the Southern Kansas Railway Company on March 24, 1898. On March 5, 1910, Brodboll and wife filed for record a plot of blocks 17, 18, 19, and 20 to Brodboll, an addition to Ponca City. The plat of this addition shows that all of the land embraced within the platted addition lies south of but adjacent to said strip of land conveyed to the railway company. Brodboll and wife deeded lot 46, block 19, of said addition to one Stanley in the year 1910. The title to this lot thereafter passed through various hands and finally vested in the defendant by a decree of the district court of Kay county, Okla., on February 5, 1927. This lot is contiguous to the strip of land conveyed to the railway company. The strip of land conveyed to the railway company was used by said railway company and its corporate successor, Atchison, Topeka & Santa Fe Railway Company, for a spur track location until sometime in the year 1924, when it was completely aban-

doned for all railroad use. Plaintiff took a quitclaim deed from said railway company in 1925, and a quitclaim deed from the sole heir of Brodboll in 1924. He filed this suit on the 2nd day of February, 1928, claiming the title and right of possession of this property. This was disputed by the defendant, who claimed that, as abutting landowner, the portion of said land adjacent to her lot accreted to her upon abandonment by the railway company. Her claim rests upon the argument that the title conveyed by Brodboll to the railway company was less than that of a fee simple, and that, upon abandonment of the property for the use for which it was conveyed, the title reverted; and that the reversionary interest was possessed by her as the adjacent landowner.

The conveyance from Brodboll to the railway company reads:

"Warranty Deed.

"This indenture, made this 24th day of March, A. D., 1898, between Hans C. R. Brodboll, a single man, of Kay county, in the Territory of Oklahoma, party of the first part, and the Southern Kansas Railway Company, a corporation, party of the second part.

"Witnesseth: That said party of the first part in consideration of the sum of one thousand and no/100 dollars, the receipt whereof is hereby acknowledged, does by these presents grant, bargain, sell and convey unto said party of the second part, its successors, heirs and assigns, all of the following real estate, situated in the county of Kay and Territory of Oklahoma, towit:

"A strip of land 50 feet in width off the north side of the northeast quarter (¼) of section number twenty-seven (27) in township number twenty-six (26) north of range two (2) east of the Indian Meridian, and lying contiguously and south of the public highway on the north side of said quarter section. The same being for a right of way for a railroad track as the survey thereof is now located and said grantee agrees to construct two grade crossings over its track for the use of grantor, and proper water ways under its track where there is heavy fills.

"To have and to hold the same, together with all and singular the tenements, hereditaments and appurtenances thereunto belonging or in any wise appertaining, forever.

"And said Hans C. R. Brodboll, for himself, his heirs, executors or administrators does hereby covenant, promise and agree to and with the said party of the second part, that at the delivery of these presents he is lawfully seized in his own right of an absolute and indefeasible estate of inheritance in fee simple, of and in all and singular the above granted and described premises, with appurtenances; that the same are free, discharged and unincumbered of and from all former and other grants, titles, charges, estates, judgments, taxes, assessments and incumbrances of what nature or kind soever; and that he will warrant and forever defend the same unto the said party of the second part, its successors and assigns against said party of the first part, his heirs and all and every person or persons whomsoever, lawfully claiming or to claim the same."

The defendant contends, in effect, that the language of the deed is in itself a limitation upon the estate conveyed; but, if it is not, there is no statutory power for a railway company to acquire a fee-simple title to real estate in Oklahoma.

We will direct our attention to the second of these contentions first. In determining whether there is a lack of authority on the part of a railway company to acquire the fee-simple title to real estate purchased for right of way, we must examine the Constitution and statutes of this state.

Section 13713, O. S. 1931 (sec. 2, art. 22, Okla. Const.), reads:

"* * * Nor shall any corporation doing business in this state buy, acquire, trade, or deal in real estate for any purpose except such as may be located in such towns and cities and as additions to such towns and cities, and further except such as shall be necessary and proper for carrying on the business for which it was chartered or licensed. * * *"

This is a limitation, not upon the quality of the estate, but the quantity of land to be owned, which quantity is measured by the necessity of use considering the purposes for which the corporation is chartered. Section 13436, O. S. 1931 (sec. 24, art. 2, Okla. Const.), reads in part:

"* * * The fee of land taken by common carriers for right of way, without the consent of the owner, shall remain in such owner subject only to the use for which it is taken. * * *"

The framers of our Constitution, while conferring the power of eminent domain upon common carriers, had in mind the inconvenience oftentimes done to a landowner by the exercise of this power to acquire rights of way over his land without his consent. It intended that common carriers exercising such power, that is, taking a right of way without the consent of the owner of the land, should only acquire the right of use

378

thereof or an easement, so to speak, which ceased upon abandonment. By this proviso, recognition was given to the fact that inconvenience and the disturbance of the possession and use of one's land by another without his consent were elements of damage or compensation in eminent domain, which, if legal, might nevertheless be inadequately provided for. By the same token the framers of our Constitution recognized that one who voluntarily conveyed his property for such a purpose for a consideration presumably voluntarily agreed upon, must have been thought to have demanded and received compensation for the resulting inconvenience, and they did not extend this limitation to such voluntary conveyances.

Section 11913, O. S. 1931, enumerates the powers conveyed upon railway corporations, and subdivision 3 thereof reads:

"Third: To acquire under the provisions of this article, or by purchase, all such real estate and other property either within or without this state, as may be necessary for construction, maintenance, and operation of its railroad, and the station, depot grounds, and other accommodations reasonably necessary to accomplish the objects of its incorporation; to hold and use the same, to lease or otherwise dispose of any part or parcel thereof, or sell the same when **not required for railroad uses, and no longer necessary to its use.**"

Section 11928, O. S. 1931, to the same purpose, reads as follows:

"Every railroad corporation incorporated under this article and any railroad corporation authorized to construct, operate or maintain a railroad within this state, has power and is authorized to enter upon any land for the purpose of examining and surveying its railroad, and to take, hold and appropriate so much real estate as may be necessary for the location, construction and convenient use of its road, including all necessary grounds for buildings, stations, workshops, depots, machine-shops, switches, side-tracks, turn-tables, snow defences and water stations; all material for the construction of such road and its appurtenances, and the right of way over adjacent land sufficient to enable such corporation to construct and repair its road and the right to conduct water to its water stations, and to construct and maintain proper drains, and may obtain the right to such real estate by purchase or condemnation in the manner provided by the law."

Section 11930, O. S. 1931, also to the same purpose, reads:

"Any railroad corporation may purchase and use real property for a price to be agreed upon with the owners thereof; or

the damages to be paid by such corporation for any real property taken as aforesaid, when not agreed upon, shall be ascertained and determined as hereinafter provided."

We find no evidence in our statutes of an intention on the part of our Legislature to limit estates in land acquired for rights of way by voluntary conveyances unqualified by their terms.

We do find that, by section 9698, O. S. 1931, our Legislature has directed:

"Every estate in land which shall be granted, conveyed or demised by deed or will, shall be deemed an estate in fee simple and of inheritance, unless limited by express words."

This is without limitation or reservation as applied to unqualified voluntary conveyances to common carriers for any legal corporate use.

We find support in our construction of the power of railway corporations to acquire fee-simple title to real estate for railway purposes in this state in the opinions of other courts construing the parent and the same statutes. The statutes above quoted were adopted by us from South Dakota. We find that the Supreme Court of South Dakota considered and construed these statutes, and while this was after we had adopted them, nevertheless the discussion in that opinion is sound and highly persuasive. We refer to Sherman v. Sherman, 23 S. D. 486, 122 N. W. 439, and the discussion therein contained. An almost identical question was presented in the case of Gilbert v. Missouri, K. & T. Ry. Co., 185 Fed. 102, which arose in the Western District of Oklahoma and was decided by the Circuit Court of Appeals for the 8th Circuit, and we quote the following from said opinion:

"The deed in question is one of general warranty and on its face conveys a title in fee. It is conceded that the law granting the right to railroad corporations to hold and acquire real estate in Oklahoma, in force at the date of the deed herein mentioned was section 1022, Wilson's Rev. & Ann. Stat., which is in the following language:

" 'To acquire under the provisions of this article, or by purchase, all such real estate and other property either within or without this territory, as may be necessary for the construction, maintenance and operation of its railroad, and the station, depot grounds, and other accommodations reasonably necessary to accomplish the objects of its incorporation; to hold and use the same, to lease or otherwise dispose of any part or parcel thereof, or sell the same when not required

for railroad uses, and no longer necessary to its use.'

"This law by necessary implication confers the power upon railroad corporations to take a fee title to land purchased for right of way or other railroad purposes. Counsel for plaintiffs in error seem to think that when it is once established that the land in question was conveyed for right of way and railroad purposes only, their case is made; but this fact which is a conceded one in this case by no means determines the quantity of the estate conveyed. We thus have power in the railroad company to take an estate in fee when it acquires land by purchase for railroad purposes, and we have a deed of conveyance unambiguous in terms which on its face conveys an estate in fee. This being so, we are not at liberty to go outside of the deed to ascertain the quantity of the estate conveyed thereby. In the case of Sherman v. Sherman, 23 S. D. 486, 122 N. W. 439, the Supreme Court of South Dakota had under consideration a statute of that state which, for the purposes of this case, is identical with the Oklahoma law above quoted. In this case certain parties had conveyed land in South Dakota to a railroad company expressed in the instrument of conveyance itself to be for railroad purposes and no other. The land was transferred to another railroad company and leased by the latter for warehouse purposes. The former owners brought an action to quiet title and for possession. The court, however, denied the relief. The Supreme Court of South Dakota in disposing of the case used the following language:

" 'It seems to be quite evident that the legislative mind intended that a fee title should pass to the railway company, and that there is no way of escaping this conclusion. It is plainly apparent from the reading of the statute that the title to be acquired under these provisions is coextensive and correlative with the power of holding and disposition of the land so acquired. The plain intent of the legislative assembly was that a complete title should be vested in the company.

" 'The very wording and form of this grant in question are such as to make it clear that plaintiffs intended to convey and the company to acquire the full title contemplated by this statute—a fee-simple title.'

"Section 907 of Wilson's Rev. & Ann. Stat. of Oklahoma provides as follows:

" 'Every estate in land which shall be granted, conveyed or demised by deed or will, shall be deemed an estate in fee simple and of inheritance unless limited by express words.'

"We have examined the cases cited by counsel for plaintiffs in error, but do not think they are persuasive, as they are decisions either where there were no statutes like the one in Oklahoma, or where the statute or deed of conveyance was different than the one in question in this case.

"We simply decide that, conceding the conveyance of the land in question was for railroad purposes only, still the deed that was executed for the purpose of conveying the land, when construed with reference to the laws of Oklahoma, conveyed an estate in fee."

The defendant has cited numerous cases apparently announcing a contrary view, and among these cases is that of Santa Fe, L. & E. R. Co. v. Laune, 67 Okla. 75, 168 P. 1022, which cites and apparently relies upon the case of Abercrombie v. Simmons, 71 Kan. 538, 81 P. 208, 1 L. R. A. (N. S.) 806. Other Kansas cases, including Midland Valley R. Co. v. Corn, 21 F. (2d) 96, are cited.

We have considered all of these Kansas cases. In each of them the court has endeavored to construe the conveyance either from its language or the proven intent of the parties, and from a statutory standpoint. In our opinion the discussion of the courts of Kansas as to the terms of the conveyance or the proven intent of the parties is dictum and immaterial. We find that the statutes of Kansas enumerating the powers of common carriers to acquire an estate in real estate to give them the power only:

"* * * to take and hold such voluntary grants of real estate and other property as shall be made to it to aid in the construction, maintenance, and accommodation of its railway; but the real estate received by voluntary grant shall be held and used for the purpose of such grant only, and to purchase and hold, with power to convey, real estate, **for the purpose of aiding in the construction, maintenance, and accommodation of its railway.**" Rev. Stat. Kan. 1923, sec. 66-501.

We, therefore, find in the Kansas statutes a limitation not found in the Oklahoma statutes, which must control the estate acquired in Kansas in any event, regardless of the language of the conveyance or the proven intent of the parties. These cases cannot be authority in Oklahoma.

Referring to the case of Santa Fe, L. & E. R. Co. v. Laune, supra, we find that this court apparently erroneously relied upon these earlier Kansas cases as authority for its holding in all respects. We find the following language in the syllabus of that case:

"An instrument which is in form a general warranty deed, conveying a strip of

land to defendant company for a right of way for its railroad, under the facts in this case, did not vest an absolute title in the railroad company; but the interest conveyed is limited by the use for which the land is acquired, and, when that use is abandoned, the property will revert to the original owners."

We find no error in the rule of law announced in the first part of that syllabus as applied to the facts in that case. Not only was the intent to limit the estate conveyed found to be expressed in the conveyance itself, but in addition the plaintiff proved that the representations and statements made by the grantee to the grantor limited the estate conveyed to the purpose for which it was acquired, and that such purpose to use the estate acquired to that limited purpose only formed a part of the consideration for the conveyance.

In the case of Okla. Ry. Co. v. Severns Paving Co., 67 Okla. 206, 170 P. 216, this court in construing a dedication to the railway company, in the following language, to wit:

"Said strips of land are set aside for the exclusive use of and dedicated to the Oklahoma City & Suburban Railway, its successors and assigns, with like effect as though deeded and conveyed to said company in fee simple by separate deed"

—said:

"The railway company here holds an entirely different estate. Its right is not merely an intangible privilege or an easement, but under the terms of the dedication is a fee-simple title. Under the provisions of section 511, Rev. Laws 1910, the terms of the dedication are to all intents and purposes a general warranty and sufficient conveyance to vest the fee simple of the lands described therein. Under section 1175 of this statute every estate in land conveyed by deed shall be deemed an estate in fee simple, unless limited by express words. Under section 1382 of this statute authority is given to the railway company to acquire land and to sell the same when no longer necessary to its use * * *"

—and quotes with approval from the cases of M., K. & T. Ry. Co. v. City of Tulsa, 45 Okla. 382, 145 P. 398, and Gilbert v. M., K. & T. Ry. Co., 185 Fed. 102, 107 C. C. A. 320. Continuing, the court said:

"The dominion and control of the strip of land in question here is not in the city authorities. If the street should be vacated by the city authorities, this private right of way would not revert to the abutting owners, but would continue to be the property of the railway company. The company took the fee from the original grantors by the dedication before the abutting owners acquired their titles."

The Supreme Court of the United States, in considering this case on appeal, 251 U. S. 104, 64 L. Ed. 168, wherein it was contended that the rule as laid down in Santa Fe, L. & E. R. Co. v. Laune, supra, was applicable, said:

"The Supreme Court of the state (Oklahoma Ry. Co. v. Severns Paving Co., 67 Okla. 206, 10 A. L. R. 157, 170 P. 216) declared: 'The fee title to the strip of land in question here appears to be in the railway company. * * * Its right is not merely an intangible privilege or an easement, but, under the terms of the dedication, is a fee-simple title. * * * The dominion and control of the strip of land in question here is not in the city authorities. If the street should be vacated by the city authorities, this private right of way would not revert to the abutting owners, but would continue to be the property of the railway company. The company took the fee from the original grantors by the dedication before the abutting owners acquired their titles.'"

The reason for the rule in Santa Fe, L. & E. R. Co. v. Laune, supra, can be justified upon the theory that this right of way was secured by and through fraudulent misrepresentations, and by the further fact that no railroad was ever established and the property was never at any time used as a right of way. However, in so far as the language of that case attempts to lay down a general rule that the estate voluntarily conveyed to a railroad company is limited by the use for which the land is acquired, the same is erroneous, and is hereby disapproved and overruled. Such a limitation upon an estate must be found in the express terms of the conveyance, or from the proven intent of the parties.

We, therefore, answer the first contention by saying that there is no constitutional or statutory limitation upon the quality of estate acquired by a common carrier, by a voluntary conveyance unqualified in its terms, for the necessary and proper carrying on of the business for which the corporation was chartered.

We next direct our attention to the first contention.

Adverting to what we have previously said, we must see whether there is evidence extraneous to the conveyance of an intent to limit the estate conveyed to the use for which it was acquired.

The defendant below made no effort to prove by evidence extraneous to the deed that the parties intended to limit the es-

tate conveyed by the warranty deed herein in the manner asserted by her. We have said in Herndon v. Shawnee Nat. Bank, 105 Okla. 207, 232 P. 432, that the one asserting the limitation upon an estate conveyed has the burden of proving such limitation. We must therefore look to the terms of the conveyance for this limitation if there is any such in this case.

The description of the land conveyed by this deed is complete in one sentence. Then follows the sentence of alleged limitation, as follows:

"The same being for a right of way for a railroad track as the survey thereof is now located and said grantee agrees to construct two grade crossings over its track for the use of grantor, and proper water ways under its track where there is heavy fills."

We are unable to see in this language any limitation upon the quality of the estate conveyed. As we see this language, it is but a convenient method of expressing, as between the grantor and grantee, certain agreements made by them for the protection of their respective lands. The grantor knew the purpose to which this strip of land would be put by the grantee, and as a part of the transaction made arrangements that the improvements placed thereon, or the alterations of the surface thereof, should not interfere with the flow of the waters to his detriment, nor should he be deprived of his right of ingress or egress to the north or be put to any expense in providing therefor. This agreement was embodied in the conveyance, rather than being expressed in a separate contract for that purpose.

We therefore hold that the conveyance herein does not in express words limit the estate conveyed.

Having reached this conclusion, it necessarily results that the estate conveyed was a fee-simple title, that there was no reversion, and a determination of the question of whether the defendant was the owner of the reversionary interest is unnecessary.

The cause is reversed and remanded.

RILEY, C. J., and SWINDALL, ANDREWS, OSBORN, BUSBY, and WELCH, JJ., concur. McNEILL, J., dissents.

McNEILL, J. (dissenting). I am unable to concur in the majority opinion. The deed in question is designated a general warranty deed. In the granting clause appears, in part, the following:

"That said party of the first part * * * does by these presents grant, bargain, sell and convey unto said party of the second part. * * * all of the following real estate situated in the county of Kay and Territory of Oklahoma, towit:

"A strip of land 50 feet in width off the north side of the northeast quarter (¼) etc. * * *

"The same being for a right of way for a railroad track as the survey thereof is now located, and said grantee agrees to construct two grade crossings over its track for the use of grantor and proper water ways under its track where there is heavy fills."

The habendum clause:

"To have and to hold the same, together will all and singular, the tenements, hereditaments and appurtenances thereunto belonging or in any wise appertaining, forever."

Then follows the usual provisions in a warranty deed that the grantor is lawfully seized in his own right of an absolute and indefeasible estate of inheritance in fee simple, of and in all and singular the above granted and described premises, etc., and that he will warrant and forever defend the same unto the party of the second part, its successors and assigns, against said party of the first part, his heirs and all and every person or persons, whomsoever, lawfully claiming or to claim the same.

This deed was executed on March 24, 1898, to the Southern Kansas Railway Company, a corporation.

In my opinion, the deed on its face shows clearly that it is for a right of way for a railroad track in accordance with a survey showing its route. It is not uncertain or ambiguous, and needs no extrinsic evidence to support this view. The language used in the granting clause was sufficiently definite to limit the grant for a particular purpose, to wit, a right of way. However, technical terminology does not control in railroad right of way deeds.

"A railroad is a public highway, established primarily for the convenience of the people, and to subserve public ends, and, therefore, subject to governmental control." See Western U. Tele. Co. v. Penn. R. R. Co., 195 U. S. 540, 577.

The proper place to restrict the use of the land, technically speaking, was in the granting clause, rather than in the habendum clause. However, the context of the whole instrument shows that the grant was only an easement to the railroad for a right of way. See Western Union Tele. Co. v. Penn-

sylvania Railway Co., 195 U. S. 540, 49 L. Ed. 312, and Abercrombie v. Simmons, 71 Kan. 538, 81 P. 208.

The words in the habendum clause: "To have and to hold 'the same," etc., "forever," are only descriptive of the extent of the duration of the enjoyment of the easement granted in the granting clause. Had the habendum clause contained the words "forever in fee simple," these words would not have enlarged what was otherwise the limited character of the grant as designated in the granting clause. See East Alabama Railway Co. v. Doe, 114 U. S. 340. In that case the Supreme Court of the United States considered a deed having the following provisions:

"This indenture, made this 31st day of August, in the year of our Lord one thousand eight hundred and sixty, between Mary McLemore, of Chambers county, of the one part, and the Opelika & Oxford R. R. Company, of the other part, witnesseth: * * * doth give, grant, bargain, and sell unto the said railroad company, and their successors and assigns, the right of way over which to pass at all times by themselves, directors, officers, agents, hirelings, and servants, in any manner they may think proper, and particularly for the purpose of running, erecting, and establishing thereon a railroad with requisite number of tracks; and to this end the limit of said right of way shall extend in width 50 feet on each side of the slope * * * To have and to hold the same unto the said * * * railroad company, their successors and assigns, to their own proper use, benefit and behoof forever, in fee simple * * * and the said Mary F. McLemore, her heirs and assigns, will warrant and defend the title thereof * * * against the claims of all persons whatsoever."

Mr. Justice Blatchford delivered the opinion of the court, and, in part, said:

"The right granted was merely a right of way for a railroad. It was granted to an existing corporation, which had a franchise. The grant to the 'assigns' of the corporation cannot be construed as extending to any assigns except one who should be the assignee of its franchise to establish and run a railroad. Nor did the mention of rights, members and appurtenances belonging and appertaining to the strip of land, or the use of the words 'forever, in fee simple,' enlarge what was otherwise the limited character of the grant. No fee in the land was conveyed, nor any estate which was capable of being sold on execution on a judgment at law, or separate from the franchise to make and own and run a railroad. The corporation could not have made a voluntary conveyance of the right of way, severed from its franchise. What it ac-quired was merely an easement in the land, to enable it to discharge its function of making and maintaining a public highway, the fee of the soil remaining n the grantor."

In the case note, reported in 1 L. R. A. (N. S.) 806, 807, under the case of Abercrombie v. Simmons, supra, it was said:

"Some additional light may be thrown on the question by adverting to the rule that the granting clause of a deed is controlling in case of conflict between it and the habendum. So that a deed granting particular land to a railroad company for a particular purpose is limited to that purpose, even though the habendum uses broader language. In 3 Washburn on Real Property (6th Ed.) sec. 2357, the author, in speaking of the effect of a repugnancy between the granting part of the deed and the habendum, says that the office and purpose of the habendum—that is to say, the part of the deed which begins with the words 'to have and to hold'— is to 'limit and define the estate which the grantee is to have in the property granted * * * It is not an essential part of a deed; and Chancellor Kent declares that it has degenerated into a mere useless form. If the granting part of the deed contain proper words of limitation, the habendum may be dispensed with altogether; and of so little importance is it deemed, compared with the words of the grant, that, if the habendum is clearly repugnant to the grant, it is treated as of no validity or effect.' "

In Atlantic & P. R. Co. v. Lesueur, Co. Treas., 2 Ariz. 428, 19 P. 157, the Supreme Court of Arizona said:

"* * * It is further urged with great force, skill, and ability that the grant of right of way to a railway is sui generis and is in fact a grant of the fee. * * * It is said that the term 'right of way' is used to describe the land granted, that is, that these are words of description, rather than of tenure. We cannot concur with this view, and no authority can be found which so holds. We must conclude that the words are used in their common, well-known, and universally accepted legal meaning, and that it was a grant of an easement as defined by the law. It was not a grant of the fee. Should the company see fit to change its line and abandon its present alignment at any point, the right of way so abandoned would revert to the grantor."

The Supreme Court of Georgia, in the case of Atlanta, B. & A. Ry. Co. v. Coffee County, 152 Ga. 432, 110 S. E. 214, considered a deed which conveyed the following property, to wit:

"One hundred feet in width of right of way, that is to say, fifty (50) feet on each side of the center of the roadbed of the present Offerman & Western Railroad, as

now located, through that portion of lot of land number five hundred and fourteen (514) in the sixth district of Coffee county, Georgia, now owned by said party of the first part; said 100 feet in width of right of way being more fully described by a sketch or plat of same hereto attached and made a part of this deed, and referred to for further identification of the railroad right of way hereby conveyed. * * * To have and to hold the said bargained and described right of way unto the said party of the second part, its successors and assigns, forever in fee simple, with covenant of general warranty."

The court said:

"It is argued with force that the grant of a right of way is in fact a grant of the fee; that the phrase 'right of way,' as here used, is intended to describe the land granted, that is, these words are words of description rather than of tenure. It will be conceded that the phrase 'right of way' does not necessarily mean the right of passage merely. The words have a twofold significance. They are sometimes used to mean the mere intangible privilege of crossing, and sometimes used to indicate that strip of land which the railroad company appropriates for its use and upon which it builds its roadbed or track. New Mexico v. U. S. Trust Co., 172 U. S. 171, 182, 19 Sup. Ct. 128, 43 L. Ed. 407. Conceding that the phrase 'right of way' has a twofold significance, the term as used in the deed from Hall to the Southern Pine Company, and under and through which the plaintiff in error claims in the instant case, cannot be construed as a descriptive term only. The twofold significance of the word must be regarded. Giving effect to the intention of the parties as gathered from the whole instrument, we are of the opinion that the deed in question did not vest in the Southern Pine Company and its successors an absolute fee-simple title to the strip of land in controversy, but an easement merely— not the easement spoken of in the old law books, but an easement peculiar to a railroad, as pointed out in Western Union Telegraph Co. v. Pennsylvania Railroad Co., 195 U. S. 540, 25 Sup. Ct. 133, 49 L. Ed. 312, 1 Ann. Cas. 517. See, also, Abercrombie v. Simmons, 71 Kan. 538, 81 P. 208, 1 L. R. A. (N. S.) 806, 114 Am. St. Rep. 509, 6 Ann. Cas. 239.

"In this view of the matter it is unnecessary to hold that the 'words "right of way" in the grant describe the tenure, not the land granted' as was held in Atlantic & Pacific Railroad v. Lesueur, 2 Ariz. 428, 19 P. 157, 1 L. R. A. 244. The words in the tenendum clause under consideration, 'forever in fee simple,' do not demand the construction contended for by plaintiff in error. It is to be noted that even in this clause of the deed, the property conveyed is described as 'right of way.' The words 'fee simple' are descriptive of the extent of duration of the enjoyment of the easement."

In the case of Midland Valley R. Co. v. Corn, 21 F. (2d) 96, Judge Kennamer, District Judge of the Northern District of Oklahoma, a former member of this court, held as follows:

"Title of railroad company to land acquired for right of way is not a fee, though having substantially the attributes of a fee for railroad purposes so long as the land is used for railroad purposes, but when such use terminates it reverts to the grantor."

The premises conveyed in that deed were a strip of land for right of way over and across a certain tract of land containing 2.7 acres. In that opinion he quotes from the Abercrombie v. Simmons Case, supra, and also from the Supreme Court of Oklahoma in the case of Santa Fe, L. & E. R. Co. v. Laune, 67 Okla. 75, 168 P. 1022. In the latter case, the language quoted is as follows:

"The deed conveying the right of way shows plainly that it was the purpose thereof to convey a right of way through the lands in controversy, and the land conveyed was limited to the use for which it was conveyed, to wit, for right of way purposes."

In the case of Morsbach v. Thurston County (Wash.) 278 P. 686, the Supreme Court of the state of Washington considered a deed conveying a right of way for the construction of the company's railroad over a certain tract of land, which right of way was thereafter abandoned, and in that case the court held that a right of way purchased or condemned by a railroad company is more than a mere right of passage or easement, and gives an interest in the property for a specific purpose so long as the property is devoted to that purpose.

This case approves the Abercrombie Case. In the body of the opinion, the court says:

"Many of the courts say that the nature of the right of way purchased or condemned by a railroad company is more than a mere easement. It has been designated as a qualified or determinable fee, although it is not very important what it is called. It is taken for a specific purpose, to be held so long as devoted to that purpose. A railroad right of way is a very substantial thing. It is more than a mere right of passage. It is more than an easement. Abercrombie v. Simmons, supra, citing Western Union Tel. Co. v. Pennsylvania R. Co., 195 U. S. 540, 25 S. Ct. 133, 49 L. Ed. 312.

"In the Abercrombie Case above cited it was held that, whatever its name, the interest taken was for the use of the right of way, was limited to that use, and must revert when the use is abandoned. In that case the instrument was one in the form of a general warranty, describing a right of way of specific width, which the grantee afterwards abandoned. The case also contains an exhaustive discussion of the cases generally bearing upon the question of such grants. It is followed by a case note in 6 Ann. Cas., supra, among others, citing many cases to the effect that, where a railroad has taken a conveyance expressly granting a right of way, it will be held to have taken an easement merely, and that a grant of a strip of land to a railroad company 'for right of way and for operating its railroad only' conveyed merely an easement. * * *

"A noted text-writer states the law as follows:

" 'A grant of a right of way to a railroad company is the grant of an easement merely, and the fee remains in the grantor. The mere fact that the railroad company's charter empowered it to acquire a greater estate than that which it contracted for has been held not to affect its rights in the land purchased. But statutes authorizing railroad companies to acquire the fee in land have been generally given effect. It is held that a deed conveying land to a railroad for a right of way gives the railroad no more rights than it would have acquired by condemnation.

" ' "The easement is not that spoken of in the old law books, but is peculiar to the use of a railroad, which is usually a permanent improvement, a perpetual highway of travel and commerce, and will rarely be abandoned by nonuser. The exclusive use of the surface is acquired, and damages are assessed, on the theory that the easement will be perpetual; so that, ordinarily, the fee is of little or no value unless the land is underlaid by quarry or mine." 'Where the intention to convey a fee does not appear, as in case of the conveyance of a "right of way" for the railroad through certain lands, the company takes an easement only. The fact that the right conveyed is designated as a fee, or that the deed contains covenants of warranty, does not necessarily pass the fee.' 1 Thompson on Real Prop. sec. 420."

In the case of Martin v. Texas & Pacific Ry. Co., 53 S. W. (2d) 514, the Court of Civil Appeals of Texas considered a deed executed in 1872, whereby the grantors granted a certain tract for depot purposes and uses to the Texas & Pacific Railroad Company. The deed, in part, was as follows:

"Know all men by these presents: That Terrell Martin and * * * his wife, * * * have granted, bargained, sold and released, and by these presents do grant, bargain, sell and release unto the Texas & Pacific Railroad Co., for depot purposes and uses, all that tract of land in the city of Dallas, * * * the same to be permanently used by said R. R. Co. for depot purposes, on the Pacific Av. route through Dallas.

"To have and to hold, all and singular the premises above mentioned unto the said Texas & Pacific R. R. Co., their heirs and assigns forever. * * *"

On September 13, 1923, suit was instituted against the grantee named to recover the land therein described on the ground that the use of the land for depot purposes had been abandoned. The Court of Civil Appeals of Texas said:

"It will be seen that the substance of the above proposition is that the deed upon its face conveys only an easement and not the fee. * * * We have reached the conclusion that the deed upon its face conveyed only an easement and that the contention of the appellee (Texas & Pac. Ry. Co.) that the deed vested the fee in it, with a covenant of user, is untenable."

In the case of Quinn v. Pere Marquette Ry. Co., 256 Mich. 143, 239 N. W. 376, on page 379, the Supreme Court of Michigan said:

" 'Right of way' has two meanings in railroad parlance—the strip of land upon which the track is laid—and the legal right to use such strip. In the latter sense it may mean an easement. But in this state and others the character of the title taken to the strip depends upon the language of the conveyance.

"Where the grant is not of the land, but is merely of the use or of the right of way, or in some cases, of the land specifically for a right of way, it is held to convey an easement only. Hickox v. Railway Co., 78 Mich. 615, 44 N. W. 143; Mahar v. Grand Rapids Terminal R. Co., 174 Mich. 138, 140 N. W. 535; Putnam v. Pere Marquette Ry. Co., 174 Mich. 246, 140 N. W. 554; Matthews v. Lake Shore, etc., R. Co., 110 Mich. 170, 67 N. W. 1111, 64 Am. St. Rep. 336; Jones v. Van Bochove, 103 Mich. 98, 61 N. W. 342; Blakely v. Chicago, K. & N. R. Co., 46 Neb. 272, 64 N. W. 972; Louisville & Nashville R. Co. v. Covington, 2 Bush. (65 Ky.) 526; East Alabama R. Co. v. Doe, 114 U. S. 340, 5 S. Ct. 869, 29 L. Ed. 136; Lockwood v. Ohio River R. Co. (C. C. A.) 103 F. 243.

"Where the land itself is conveyed, although for railroad purposes only, without specific designation of a right of way, the conveyance is in fee and not of an easement. The distinction was pointed out by

Mr. Justice Sharpe in Epworth Assembly v. Ludington, etc., Ry. Co., 236 Mich. 565, 573, 211 N. W. 99, 102; 'On the face of these deeds, it would appear that a determinable fee had been created. In neither deed is the land conveyed for a right of way, although an inference would doubtless be drawn that it was, from the description used. The first deed provides that the land shall "be used for railroad purposes only," and the second that, if the land shall "cease to be used for railroad purposes" for "one year or longer," it shall revert to the grantor. Had not these provisions been inserted, it seems clear that an unqualified title in fee would have passed to the grantees.' Weber v. Ford Motor Co., 245 Mich. 213, 222 N. W. 198; Ballard v. Louisville & Nashville R. Co., 5 S. W. 484, 9 Ky. Law Rep. 523; Coburn v. Coxeter, 51 N. H. 158; Gilbert v. M., K. & T. R. Co. (C. C. A. Okla.) 185 F. 102; Sherman v. Sherman, 23 S. D. 486, 122 N. W. 439; Rice v. Clear Springs Coal Co., 186 Pa. 49, 40 A. 149."

In the case of Center Bridge Co. v. Wheeler & Howes Co., 86 Atl. 11, on page 12, the Supreme Court of Connecticut said:

"The easement which a railroad acquires in its right of way is like that of a highway in that it is for the use of the public. New York N. H. & H. R. Co. v. Long, 69 Conn. 424, 437, 37 Atl. 1070. It is one which has attached to it the incidents of exclusive occupation and enjoyment for the public use in a peculiar degree. New York & N. E. R. Co. v. Comstock, 60 Conn. 200, 210, 22 Atl. 511; Nolan v. New York, N. H. & H. R. Co., 53 Conn. 461, 472, 4 Atl. 106. It possesses the feature of prospective permanence no less than does that of a highway."

In the case of West Texas Utilities Co. v. Lee, 26 S. W. (2d) 457, the Court of Civil Appeals of Texas, it is said:

"* * * It is held by the great weight of authority that a deed to a railroad for right of way purposes, or a deed to a county for public road purposes, only conveys an easement and not a fee, although the language employed may be capable of conveying the fee. Right of Way Oil Co. v. Oil Co., 106 Tex. 94, 157 S. W. 737, 51 L. R. A. (N. S.) 268; Stevens v. Galveston, H. & S. A. Ry. Co. (Tex. Comm. App.) 212 S. W. 639; 1 Thompson on Real Property, pp. 532-534, where the rule is stated that 'a deed to a county the habendum clause of which is "to have and to hold said strip of land unto said party of the second part for the uses and purposes of a public highway or street," conveys merely an easement of way and not the fee.

Reference has been made in the majority opinion to the federal case of Gilbert v. Missouri & Texas Ry. Co., 185 Fed. 102, and the case of Sherman v. Sherman, 23 S. D. 486, 122 N. W. 439. As I read these cases they are distinguishable from the case at bar.

The deed involved in the Gilbert Case supra, was executed August 13, 1902, prior to the time the Constitution of Oklahoma was adopted. The deed as shown by the opinion, is as follows:

"Warranty Deed.

"Know all men by these presents: That Jason A. Powell and Barbara A. Powell, his wife, of the county of Pawnee in the territory of Oklahoma, parties of the first part, for and in consideration of the sum of four hundred dollars ($400) to said grantors in hand paid, the receipt whereof is hereby acknowledged, do hereby grant, bargain, sell and convey unto the Missouri, Kansas & Oklahoma Railroad Company, a corporation, created and existing under and by virtue of the laws of the territory of Oklahoma, party of the second part, its successors, and assigns, the following described tract or parcel of land, real property and premises, situated in the county of Pawnee, territory of Oklahoma, that is to say: A strip or parcel of land 100 feet in width, running through and across my farm on the line as now located in the north half of the northwest 'quarter of section 16, township 21, range 8 east, Indian Meridian, in the Outlet, Okla.

"To have and to hold the premises hereby conveyed with all the right, privileges and appurtenances thereunto belonging, or in any wise appertaining, unto the said Missouri, Kansas & Oklahoma Railroad Company, party of the second part, its successors and assigns forever, free, clear and discharged of and from parts, charges, taxes, judgments, mortgages, and incumbrances of whatsoever nature, and the said Jason A. Powell and Barbara A. Powell, and their heirs, executors, and administrators hereby covenant to warrant and defend the title to the premises hereby conveyed against the claims of any person or party.

"In witness whereof we have hereunto subscribed our names the 13th day of August, A. D. 1902.

"Jason A. Powell,
"Barbara A. Powell."

The deed was designated as a warranty deed. There was no limitation, exception, restriction or reservation of any kind appearing on the face of that instrument; no mention of a railroad right of way; or of any survey or route of the railroad, unless it be in the vague language, to wit:

"A strip or parcel of land 100 feet in width, running through and across my farm

on the line as now located in the north half of the northwest quarter. * * *"

In reference to the deed the Circuit Court of Appeals, Eighth Circuit, said:

"* * * We have a deed of conveyance unambiguous in terms which on its face conveys an estate in fee. This being so, we are not at liberty to go outside of the deed to ascertain the quantity of the estate conveyed thereby."

It is to be observed that the provisions in that deed are keenly different from those in the instant case. Such language cannot be applied to the deed in question. A reading of the deed which we are considering will not show, as stated in the Gilbert Case, that the deed "on its face conveys an estate in fee."

The Gilbert Case recites section 907, of Wilson's Revised and Annotated Statutes, to wit:

"Every estate in land which shall be granted, conveyed or demised by deed or will be deemed an estate in fee simple and by inheritance unless limited by express words."

The opinion then concludes as follows:

"We have examined the cases cited by counsel for plaintiffs in error, but do not think they are persuasive, as they are decisions either where there were no statutes like the one in Oklahoma, or where the statute or deed of conveyance was different than the one in question in this case.

"We simply decide that, conceding the conveyance of the land in question was for railroad purposes only, still the deed that was executed for the purpose of conveying the land, when construed with reference to the laws of Oklahoma, conveyed an estate in fee."

It is to be observed that the Circuit Court of Appeals, Tenth Circuit, which has jurisdiction over the same territory as the former Eighth Circuit, has not followed the decision in the Gilbert Case. See Midland Valley Railroad v. Sutter, 28 F. (2d) 163 (1928). It is also to be observed that the Gilbert Case was decided by the Circuit Court of Appeals prior to our decisions in the Laune (1917) and Orth v. Gregory (1924) cases.

In the case of Midland Valley Railroad v. Sutter, supra, 28 F. (2d) 163, the Circuit Court of Appeals, Eighth Circuit, in an opinion by Judge Phillips, wherein the Abercrombie Case, supra, was cited with approval, held that under the statutes and decisions of Kansas, minerals under a railroad right of way belonged to the owner of the fee and not to the railroad company. In that case the railroad company sought to enjoin the defendants, adjoining owners of the fee to the right of way, from entering upon and occupying the surface of the right of way for the purpose of drilling three oil and gas wells without the railroad's consent, even though they had attempted to place oil derricks, timbers, and necessary oil equipment at points more than 50 feet from the center of the main track when the right of way of the railroad company on that side covered a strip of land 195 feet from the center of the track.

The defendants contended they had the right to enter upon the right of way to drill oil and gas wells. The court entered a decree permanently enjoining defendants from entering upon that portion of the right of way which was involved for the purpose of drilling for oil and gas. This holding is not consistent with the fee interest in the Gilbert Case. The Gilbert Case is not and never has been controlling upon this court. I do not consider the opinion well reasoned. The decisions of state courts are conclusive and controlling upon the federal courts in reference to construction placed upon state statutes, but that is not the rule to apply to the interpretation of state statutes by federal courts. They may be persuasive, but not controlling. In other words, the Laune and Orth v. Gregory Cases are controlling upon the federal court. These cases interpret the nature of the estate which is acquired by a railroad for a right of way. If the Gilbert Case was remotely persuasive authority at one time, it is apparent that it no longer controls since our court has spoken in no uncertain terms in the Laune and Orth Cases, supra, that the interest conveyed to a railroad for a right of way under a general warranty deed will not vest an absolute title in the railroad company, but that the interest which is thereby conveyed is limited by the use for which the land is acquired, and when that use is abandoned the property reverts to the adjoining owner.

It is not important in this case, and we need not be concerned with the question of the quantity of the estate which a railroad company may take under a warranty deed, which quantity is not defined by statute, when no reference is made in the deed for a right of way, for the deed in question on its face shows that it was for a public use; that this necessity for its use was conclusive by reason of the reference to the route and survey which had been made; and that the very object, purport,

and necessity of the grant for a right of way clearly appear in the instrument. This is the only fair, natural, and logical construction, in my opinion, which can be placed on this deed.

The instrument, when considered in its entirety, is, in limine, tantamount to a compulsory proceeding. The landowner cannot say whether he will or will not deal with his land when the railroad has surveyed a railroad right of way through his premises, which fact is so recited in the deed we are considering. When the railroad seeks a right of way from a landowner, such owner exercises no election as to whether this land can be appropriated. The right of sovereignty for a public use through eminent domain proceedings confronts him. See Hill v. Western Vermont R. Co., 32 Vt. 68.

In further reference to the conclusiveness of the decisions of the state courts upon the federal courts, the Supreme Court of the United States, in the case of Moores v. National Bank, 104 U. S. 625, held that the construction given by the Supreme Court of a state to a statute of limitations of the state will be followed by the Supreme Court of the United States in a case decided the other way in the federal court before the decision of the state court. In that case it appears that the decision was rendered by the Circuit Court in accordance with an opinion of the majority of the superior court of city of Cincinnati, which was the only decision on the question in the courts of Ohio at the time of the trial before the Circuit Court. Subsequent to the trial before the Circuit Court, the Supreme Court of Ohio held contrary to the opinion of the superior court of Cincinnati, and Mr. Justice Gray, who delivered the opinion for the Supreme Court of the United States, said:

"* * * The construction thus given to the statutes by the highest court of the state should be followed by this court."

In the case of American Sugar Refining Co. v. New Orleans, 119 Fed. 691, the Circuit Court of Appeals, Fifth Circuit, reversed the federal trial court because the state Supreme Court of Louisiana explicitly overruled a prior decision of that court which had been followed by the federal trial court. See, also, Wade v. Travis, 174 U. S. 499.

However, it is only logical to assume that had the recitals of the instant deed been incorporated in the Gilbert Case so as to show that the land was to be used as a right of way, said Circuit Court of Appeals would not have held that an unqualified fee passed to the grantee railroad company. See Quinn v. Pere Marquette Railway Co., supra; also, Midland Valley Railroad Co. v. Sutter, 28 F. (2d) 163.

I conclude that the Gilbert Case is no authority to cite for overruling the Laune and Orth Cases, supra. The Gilbert Case cites and relies upon Sherman v. Sherman, supra.

The Supreme Court of South Dakota, in the Sherman Case, considered an instrument executed by the guardian of certain minors involving certain real estate situated in Sioux Falls, consisting of 5.86 acres and being about 719 feet long and about 342 feet wide and being a little in excess of two ordinary city blocks, in the year 1887 to the Cherokee and Dakota Railroad Company, which was a corporation duly organized and authorized to construct, operate, and maintain a railroad within the Territory of Dakota, and which at the time was engaged in the construction of a line of railroad from Cherokee, Iowa, to Sioux Falls, and said company was desirous of taking, holding, and operating said parcel of ground for station grounds, tracks and side tracks, and switches. The agreement provided that the railroad company would pay the owners the sum of $6,850, the then market value of the fee title of said parcel of land, all of which was recited in the agreement, and that the same was in full payment for all damages and claims whatsoever by reason of the taking, holding, and appropriating of said lands for said railroad company. This instrument was approved by the judge of the probate court of said county. The opinion recites that the instrument contained the following language:

"Whereas, the Cherokee & Dakota Ry. Co. deem it necessary to take, hold and appropriate for the purpose of station grounds, tracks, side tracks, switches, and the location, construction, and convenient use of its railroad, but for no other purposes, the following described real estate * * * with the approval of the judge of the probate court of said county, which approval is appended to and made a part of this instrument, agreed with said railroad company upon the sum of $6,850 in full payment for all damages and claims whatsoever in favor of said Annie C. Phillips, * * * by reason of the taking of said real property, and have settled with said railroad company for all said damages and claims for said sum of money, and whereas, said railroad company has, with authority, consent, and concurrence of said Annie C. Phillips, and with the approval of

said judge of probate court, paid * * * as such guardian, for and on behalf of said Annie C. Phillips, and said minors; * * * that the said parties of the first part, in consideration of the sum of $6,850, * * * do hereby discharge and forever release the said Cherokee & D. R. Co., from all damages and claims whatsoever, on account of the taking, holding, and appropriation of said above-described land for the purpose aforesaid, but no other. * * *"

In that case the court said:

"The vital question is: What was the effect of the said written instrument under the laws of the territory of Dakota in force at the time of its execution? Did said instrument pass an unconditional fee title or an easement only to the said Cherokee & Dakota Railway Company? Section 488, Rev. Civ. Code, was formerly section 2980, Comp. Laws, and was in force during the year 1887. This section, among other things, provided that every railroad corporation authorized to construct, operate, or maintain a railroad within this territory. * * *"

Section 2980, supra, of the statutes of South Dakota is similar to the third paragraph of section 1382, R. L. 1910, of Oklahoma, being section 1022 of Wilson's Revised and Annotated Statutes, 5483, C. O. S. 1921. This section authorizes a railroad corporation to construct, operate or maintain a railroad within this state, and grants to it the power to acquire or purchase real estate necessary for the construction of the railroad and the power to "hold and use the same, to lease or otherwise dispose of any part or parcel thereof, or sell the same when not required for railway uses, and no longer necessary to its use."

Section 3002 of the Compiled Laws of 1887 of South Dakota, was also considered, which provided that when the real property of the minor was taken, the guardian might agree and settle with the railroad for all damages and claims. Also, section 2854, which provided:

"In all cases where an absolute power of disposition is given not accompanied by a trust, and no remainder is limited on the estate of the holder of the power, he is entitled to an absolute fee."

Also, section 3254:

"A fee-simple title is presumed to be intended to pass by a grant of real property, unless it appears from the grant that a lesser estate was intended."

Also, section 3238:

"A grant is to be interpreted in favor of the grantee, except that a reservation in

any grant, and every grant made by a public officer, as such, * * * is to be interpreted in favor of the grantor."

That court specifically held that the owners of the property conveyed the premises in question to the railroad company in 1887, while the above statutes were in force, by an instrument obviously intended to transfer the title contemplated by section 2980, supra, being section 488, Revised Civil Code. In other words, that the interest acquired by condemnation proceedings by a railroad under the statutory laws in force in 1887 was a fee title. Hedger v. Aberdeen, B. & N. W. Ry. Co. et al. (S. D.) 128 N. W. 602.

In the body of the Sherman opinion, the court said:

"Under subdivision 3 of section 2980 the Legislature intended that a fee title should pass, and the parties to this instrument acted and intended to convey title with that provision of the statute in view."

A strong dissenting opinion was filed in that case, in which attention was directed to two provisions of the Constitution, to wit, section 7 of article 17, of the Constitution, which provided:

"No corporation shall engage in any business other than that expressly authorized in its charter, nor shall it take or hold any real estate except such as may be necessary and proper for its legitimate business."

Section 13, article 6:

"The fee of land taken for railroad tracks or other highways shall remain in the owners, subject to the use for which it is taken."

These constitutional provisions were not in force and effect at the time the instrument involved, authorized by eminent domain proceedings, was executed by the guardian of the minors to said railroad company, but it was contended in the dissenting opinion filed in that case that the statutory provisions in force in 1887 were in harmony with the aforesaid constitutional provisions. The rule applied in the Sherman Case does not extend after the adoption of the Constitution of that state. See Annotator's note to Compiled Laws of South Dakota of 1929.

The instrument executed in the South Dakota case, approved by the judge of the probate court, was not the usual warranty deed. The grantee sought to bring the instrument within the provisions of section 3002, Comp. Laws, S. D., being similar

to section 1406, R. L. Okla. 1910, 5507, C. O. S. 1921, which provided that, whenever a railroad corporation shall take any real property of any minor necessary for the construction, maintenance, and operation of its railroad, the guardian of said minor "may settle with the said corporation for all damages or claims by reason of the taking of such real property, and may give valid releases and discharges therefor upon the approval thereof by the judge of the county court. That instrument specifically released the railroad company from all damages and claims by reason of the taking and appropriating the land in question. Such a provision is not involved in the instant case, and is not common to the general warranty deed. That court held that the term "claim" was a broad and comprehensive term and included title and ownership in real property, and that the words "for railway purposes and no other" were not sufficient to create a restriction or reservation, "but amounted to an attempt to restrict the use," and that "all the attending circumstances indicate a contract of bargain and sale and an intention to transfer the fee title and not an easement."

The dissenting words of Mr. Justice Corson, to wit:

"* * * by the Dakota Act the guardian is only authorized to release the damages, but no provision is made for the conveyance of the title in fee to the company"

—appear to be a correct analysis of the Railroad Condemnation Act enacted by the Legislature of South Dakota in 1887, which was involved in the Sherman Case. It appears to me to transcend the limits of reasonable construction to say that section 1406, supra, of the Oklahoma statutes would authorize a guardian to convey his ward's real estate for a railroad right of way. That section of the statutes, in my opinion, does not authorize a conveyance in fee simple of the land of a minor for a right of way, but an agreement for the settlement of the damages and claims arising out of the taking and appropriating of the land. It is not, accurately speaking, a voluntary conveyance, but rather a compulsory proceeding authorized by the sovereignty under the guise of eminent domain for a public use. See Hill v. Western Vt. R. Co., 32 Vt. 68, supra. Property taken for railroad purposes is for the benefit of the public, a public use.

The majority opinion in the instant case, after quoting from the Gilbert Case, supra, says:

"The defendant has cited numerous cases apparently announcing a contrary view, and among these cases is that of Santa Fe, L. & E. R. Co. v. Laune, 67 Okla. 75, 168 P. 1022, which cites and apparently relies upon the case of Abercrombie v. Simmons, 71 Kan. 538, 81 P. 208, 1 L. R. A. (N. S.) 806. Other Kansas cases, including Midland Valley R. Co. v. Corn, 21 F. (2d) 96, are cited.

"We have considered all of these Kansas cases. In each of them the court has endeavored to construe the conveyance either from its language or the proven intent of the parties; and, from a statutory standpoint. In our opinion the discussion of the courts of Kansas as to the terms of the conveyance or the proven intent of the parties is dictum and immaterial. We find that the statutes of Kansas enumerating the powers of common carriers to acquire an estate in real estate to give them the power only:

"'* * * to take and hold such voluntary grants of real estate and other property as shall be made to it to aid in the construction, maintenance and accommodation of its railway; but the real estate received by voluntary grant shall be held and used for the purpose of such grant only, and to purchase and hold, with power to convey real estate for the purpose of aiding in the construction, maintenance, and accommodation of its railway.'

"We, therefore, find in the Kansas statutes a limitation not found in the Oklahoma statutes, which must control the estate acquired in Kansas in any event, regardless of the language of the conveyance or the proven intent of the parties. These cases cannot be authority in Oklahoma."

It does not appear to me that the correct conclusion has been drawn from the Abercrombie Case, to which I shall hereafter refer, and to "all of these Kansas cases," and that the assertion, "the discussion of the courts of Kansas as to the terms of the conveyance of the proven intent of the parties is dictum and immaterial," cannot be maintained. The majority opinion quotes the Kansas statute, supra, as it appears in the Abercrombie Case.

In this connection I am calling attention to the first three paragraphs of section 5483, C. O. S. 1921 (section 1382, R. L. 1910, section 1035, Statutes 1890), to wit:

"Powers of Railroad Corporations. * * * First: To cause such examination and surveys for its proposed railroad to be made, either within or without this state, as may be necessary to the selection of the most advantageous route; and for such purpose, by its officers or agents and servants, to enter upon the lands or waters of any per-

son, but subject to responsibility for all damages which shall be done thereto.

"Second: To take and hold such voluntary grants of real estate and other property, either within or without this state, as may be made to it to aid in the construction, maintenance, and accommodation of its railroad; but the real estate received by voluntary grant shall be held and used for the purposes of such grant only.

"Third. To acquire under the provisions of this article, or by purchase, all such real estate and other property, either within or without this state, as may be necessary for the construction, maintenance and operation of its railroad, and the station, depot grounds, and other accommodations 'reasonably necessary to accomplish the object, of its incorporation; to hold and use the same, to lease or otherwise dispose of any part or parcel thereof, or to sell the same when not required for railroad uses, and no longer necessary to its use."

The General Statutes of Kansas of 1868, chapter 23, section 47, R. S. of Kansas, 1923, chapter 66, article 5, section 501, contain the following:

"Powers of Railway Corporation. * * *

"First. To cause such examination and survey for its proposed railway to be made as may be necessary to the selection of the most advantageous route; and for such purpose, by its officers, agents or servants, to enter upon the lands or water of any person, but subject to liability for all damages which shall be done thereto.

"Second: To take and hold such voluntary grants of real estate and other property as shall be made to it to aid in the construction, maintenance, and accommodation of its railway; but the real estate received by voluntary grant shall be held and used for the purpose of such grant only and to purchase and hold, with power to convey real estate for the purpose of aiding in the construction, maintenance, and accommodation of its railway."

It will be observed that all of the foregoing provisions in the Kansas statute are to be found in the above-quoted portion of section 5483, supra, of the Oklahoma statutes, but that all of the provisions of the Oklahoma statutes are not included in the Kansas statutes. The only portion of the third paragraph of said section 5483 of the Oklahoma Statutes, which is found in the Kansas statutes, is as follows:

"* * * to purchase and hold with power to convey real estate for the purpose of aiding in the construction, maintenance, and accommodation of its railway."

The majority opinion says:

"We, therefore, find in the Kansas statutes a limitation not found in the Oklahoma statutes, which must control the estate acquired in Kansas in any event, regardless of the language of the conveyance or the proven intent of the parties."

I conclude that it cannot be permissibly gainsaid that there is any substantial difference between the provisions of our statutes and those in Kansas under the general powers conferred upon railroad corporations.

The majority opinion also says:

"Referring to the case of Santa Fe, L. & E. R. Co. v. Laune, supra, we find that this court apparently erroneously relied upon these earlier Kansas cases as authority for its holding in all respects. We find the following language in the syllabus of that case:

"'An instrument which is in form a general warranty deed, conveying a strip of land to defendant company for a right of way for its railroad, under the facts in this case, did not vest an absolute title in the railroad company; but the interest conveyed is limited by the use for which the land is acquired, and, when that use is abandoned, the property will revert to the original owners.

"'We find no error in the rule of law announced in the first part of that syllabus as applied to the facts in that case. Not only was the intent to limit the estate conveyed found to be expressed in the conveyance itself, but in addition the plaintiff proved that the representations and statements made by the grantee to the grantor limited the estate conveyed to the purpose for which it was acquired, and that such purpose to use the estate acquired to that limited purpose only formed a part of the consideration for the conveyance."

Before discussing the Laune Case, I refer to the Abercrombie Case, which was delivered by Mr. Chief Justice Johnson for the Supreme Court of Kansas in 1906. So far as I have been able to ascertain, the soundness of the views expressed in that opinion have stood unchallenged for 28 years by that court, by the highest courts of many of our sister states, and the Circuit Court of Appeals of the Tenth Circuit. It has been quoted with approval many times: See Herod v. Carter, 81 Kan. 236, 106 P. 32; State ex rel. Dawson, Atty. Gen., v. City of Wichita, 88 Kan. 375, 128 P. 369; Disney v. Lang, 90 Kan. 309, 133 P. 572; Lithgow v. Pearson, 25 Colo. App. 70, 135 P. 759; Santa Fe L. & E. R. Co. v. Laune, 67 Okla. 75, 168 P. 1022; Union Pac. R. Co. v. Davenport, 102 Kan. 513, 170 P. 993; Coon v. Sonona Magnesite Co., 182 Cal. 597, 189 P. 271; Vandalia R. Co. v. Topping, 62 Ind. App. 657, 113 N. E. 421; Chambers v. Great

Northern Power Co., 100 Minn. 214, 110 N. W. 1128; Norton v. Duluth Transfer Ry. Co., 129 Minn. 126, 151 N. W. 997; Louisiana & A. Ry. Co. v. Louisiana Ry. & Naval Co., 127 La. 587, 53 So. 872; Kansas City Southern Ry. Co. v. Sandlin (Mo. App.) 158 S. W. 857; Conn v. White, 189 Ky. 185, 224 S. W. 764; Radetsky v. Jorgensen et al., 70 Colo. 423, 202 P. 175; Schaff v. Roberts, 113 Kan. 423, 215 P. 447; Midstate Oil Co. v. Ocean Shore R. Co., 93 Cal. App. 704, 270 P. 216; Roxana Petroleum Corporation v. Jarvis, 127 Kan. 365, 273 P. 661; Union Pac. R. Co. v. Huse, 127 Kan. 601, 274 P. 240; Morsbach v. Thurston County, 152 Wash. 562, 278 P. 686; Barker v. Lashbrook, 128 Kan. 595, 279 P. 12; Danielson v. Woestemeyer et ux., 131 Kan. 796, 293 P. 507; Barnes et ux. v. Southern Pac. Co., 300 Fed. 481 (C. C. A. 9th C.); Midland Valley R. Co. v. Corn, 21 F. (2d) 96; Midland Valley R. Co. v. Sutter, 28 F. (2d) 163; Roxana Petroleum Corp. v. Corn, 28 F. (2d) 168: Branch v. Central Trust Co. of Ill. et al., 320 Ill. 432, 151 N. E. 284; Atlanta, B. & A. Ry. Co. v. Coffee, 156 Ga. 432, 110 S. E. 214; Holloman v. Board of Education, 168 Ga. 359, 147 S. E. 882; Irvin v. Pere Marquette Ry. Co., 256 Mich. 143, 239 N. W. 376.

Under such an array of authorities it is apparent that the Abercrombie Case has received careful scrutiny and judicial consideration. This court, in effect, overrules the force of that opinion. The facts as revealed by that opinion show that a railroad company had surveyed and staked out a route of railroad over the land of Simmons, and that it purchased from him by general warranty deed "all the lands in the southwest quarter of section 15, township 9 south, of range 7 west, lying within 50 feet of the center line of the main track of said railroad, and containing 6.23 acres, more or less."

In that case it was insisted that the railroad company acquired absolute title to the strip of land. There was presented against this contention that the description was indefinite and that the instrument did not convey anything more than a railroad right of way, and when it was not used for that purpose, it reverted to the original owner or those holding under them. The Supreme Court held as follows:

"An instrument which is in form a general warranty deed, conveying a strip of land to a railroad company for a right of way for a railroad, will not vest in absolute title in the railroad company; but the interest conveyed is limited by the use for which the land is acquired, and when that

use is abandoned, the property will revert to the adjoining owner."

I shall quote from the opinion hereafter in the Laune Case.

In the case of Roxana Petroleum Corporation v. Jarvis, 127 Kan. 365, 273 P. 661 (1929), the Supreme Court of Kansas said:

"A railroad company took a warranty deed from Simmons of a strip of land through his farm, for right of way purposes. No railroad was built, and the railroad company conveyed the strip to Abercrombie. It was held Abercrombie obtained nothing by his deed.

"'An instrument which is in form a general warranty deed, conveying a strip of land to a railroad company for a right of way, will not vest an absolute title in the railroad company, but the interest conveyed is limited by the use for which the land is acquired, and when that use is abandoned the property will revert to the adjoining owner.' Abercrombie v. Simmons, 71 Kan. 538, syl. 3, 81 P. 208, 1 L. R. A. (N. S.) 806, 114 Am. St. Rep. 509, 6 Ann. Cas. 239.

"The meaning of the phrase 'right of way,' was thus definitely established, so far as the interest of a railway company regarding the land to which the phrase refers is concerned. The nature of the interest was discussed in the opinion in the Abercrombie Case. While the term 'easement' does not accurately describe the interest, the term is precise enough when the purpose is to discriminate the interest in a general way from the totality of rights, privileges, powers, and immunities which constitute complete ownership. So considered, the phrase 'right of way' means an easement."

See, also, Danielson v. Woestemeyer (1930, Kan.) 293 P. 507, wherein it was expressly held that a railroad could acquire with right to convey the fee title to land purchased and used for railroad purposes other than a right of way, citing 33 Cyc. 167, 168, to show that the interest acquired "must be determined from the intention of the parties as shown by the whole instrument, taken in connection with the railroad company's charter or governing statutes"; also citing 1 Elliott on Railroads (3rd Ed.) section 461, old edition, sec. 400. In that case the rule announced in the Abercrombie Case was reiterated.

In the Laune Case, supra, the deed which was sought to be canceled was designated a warranty deed as shown by the brief for plaintiff in error filed in that case. The deed, in part, is as follows:

"Know all men by these presents * * * Laune and * * * his wife, party of the first part in consideration of the sum of three

hundred seventy-five dollars * * * do hereby grant, bargain, sell, and convey unto the Sante Fe, * * * Railroad Company, a New Mexico corporation, the following described real property and premises, situated in Woodward county, Territory of Oklahoma, to wit: A strip of land 100 feet in width, being 50 feet in width on either side of the center line of the right of way of the Santa Fe, Liberal & Englewood Railroad as the same is now surveyed; staked and located over and across the northeast quarter of the southeast quarter, the southwest quarter of the northeast quarter and the northwest quarter of the northeast quarter of section twenty-one (21), also the east half of the southeast quarter and the northwest quarter of the southeast quarter of section seventeen (17), all in township twenty-three, north of range twenty-one (21), W. I. M., together with all improvements thereon and the appurtenances thereunto belonging and warrant the title to the same.

"To have and to hold said described premises unto the said party of the second part, its successors, and assigns forever, free, clear, and discharged of and from all former grants, charges, taxes, judgments, mortgages, and other liens and incumbrances of whatsoever nature.

"Signed, and delivered this Seventh day of January, 1907."

The majority opinion in the case at bar in discussing this case states "that this court apparently erroneously relied upon these earlier Kansas cases as authority for its holding in all respects." I do not think that this interpretation can stand. In speaking of the above deed in the Laune Case, Mr. Justice Turner said:

"The deed conveying the right of way shows plainly that it was the purpose thereof to convey a right of way through the lands in controversy, and the land conveyed was limited to the use for which it was conveyed, to wit, for the right of way purposes; and when the right of way was abandoned by defendant, as we here hold, the land reverted to the original owners thereof."

By this language the court did not base its decision upon the representations and statements made by the grantee to the grantor in reference to limiting the land to the purpose for which it was acquired. Mr. Justice Turner very pointedly said:

"The deed conveying the right of way shows plainly that it was the purpose thereof to convey a right of way through the lands in controversy, and the land conveyed was limited to the use for which it was conveyed, to wit, for right of way purposes."

In other words, the court held that the deed clearly shows that it was for the purpose of a right of way. As I read this opinion, the syllabus properly reflects the law announced in the body of the opinion. There was an abandonment, and the deed shows plainly, as stated in the opinion, that it was a conveyance of a right of way, and it was not necessary for a determination of the issues therein involved to rely on the Abercrombie v. Simmons Case, supra, which was cited in that opinion. The Abercrombie Case was not controlling on this court. The Laune Case does not consider the Kansas statute referred to in the majority opinion as being foundation for the result in the Abercrombie Case, although the Kansas statute and Oklahoma statutes, as I have heretofore set forth, are consonant with each other. There ought to be cogent reasons for overruling the Laune Case, which has been standing as the law of this state since the year 1917.

Mr. Justice Johnston, after quoting from the second provision of the General Statutes of 1868, of the state of Kansas, which I have heretofore quoted, says:

"Aside from this provision, there is in the same section authority given to enter upon the lands of others for the purpose of selecting and surveying a route for a proposed railway, and in that connection to lay out a road not exceeding 100 feet in width, and a greater width where the proper construction of the road requires it. It is provided, too, that a map and profile of the route intended to be adopted shall be made, and that notice shall be given to all occupants of lands on the designated route which have not been purchased or donated. Gen. St. 1901, secs. 1318, 1319. There is another provision for obtaining land for a right of way by compulsory process under the power of eminent domain. Gen. St. 1901, secs. 1359-1365. The statutes recognize that land for a right of way may be acquired by purchase as well as by compulsory proceedings, and, when so acquired for that purpose, does the railroad company hold a higher or better right than where it is acquired by virtue of eminent domain? May a railroad company purchase a strip of land, extending a great distance through the country and over many farms, abandon the enterprise, and then sell the strip to those who will put it to a wholly different use; one which might be both obnoxious and menacing to the adjoining owners? Where an absolute and unqualified fee-simple title is acquired by a railroad company, it may, of course, in the absence of express or implied restrictions, be conveyed to another. After stating this rule, Judge Elliott remarks: 'But where there is an implied restriction, as is often the case in regard to the right of way, or the like, of a railroad company, the grant does not ordinarily vest a fee in the company, but vests such

an estate—usually an easement—as is requisite to effect the purpose for which the property is required. Where the grant is of "surplus real estate," as it is often called —that is, of real estate not forming part of the railroad or its appendages—a deed effective to vest a fee in a natural person will vest that estate in a railroad company.' 2 Elliott on Railroads, sec. 400. The fact that the deed contains covenants of warranty, or that the right acquired is designated as a fee, is not necessarily controlling."

Other cases are cited in that opinion: Jones v. Van Bochove, 103 Mich. 98, 61 N. W. 342; Railway Co. v. Geisel, 119 Ind. 77, 21 N. E. 470; Hill v. Railway Co., 32 Vt. 74; Railroad Co. v. Aldridge, 135 N. Y. 95, 32 N. E. 50, 17 L. R. A. 516; Choteau v. Missouri Pacific Railroad Co., 122 Mo. 375, 22 S. W. 458, 30 S. W. 299, and many other cases. After a painstaking discussion of these cases, Justice Johnston continued:

"Now, as we have seen, the deed and those things to which we may look in its interpretation plainly show that the strip was sold on the one part and purchased on the other as and for a right of way for a railroad. This use, being within the contemplation of the parties, is to be considered as an element in the contract, and limits the interest which the railroad acquired. It took the strip for a specific purpose, and could hold it so long as it was devoted to that purpose. Whether the right of way purchased should be designated as an easement or as a qualified or determinable fee, may not be very important.

"A right of way, although commonly designated as an easement, is an interest in land of a special and exclusive nature, and of a high character. In speaking of its character, the Supreme Court of the United States said: 'A railroad right of way is a very substantial thing. It is more than a mere right of passage. It is more than an easement. We have discussed its character in New Mexico v. United States Trust Co., 172 U. S. 171, 19 Sup. Ct. 128, 43 L. Ed. 407. We there said (page 183, 172 U. S., page 133, 19 Sup. Ct., 43 L. Ed. 407) that if a railroad's right of way was an easement it was "one having the attributes of the fee-perpetuity and exclusive use and possession; also the remedies of the fee, and like it, corporeal, not incorporeal, property."' Western Union Tel. Co. v. Penn. Railroad Co., 195 U. S. 540, 570, 25 Sup. Ct. 133, 141, 49 L. Ed. 312. Whatever its name, the interest was taken for use as a right of way, it is limited to that use, and must revert when the use is abandoned."

That opinion was not bottomed upon the quantity of estate expressed by any statute, nor upon the competency of a railway company to take a fee in land which had been acquired for railroad purposes other than a right of way. It was confined to the strip of land which "was sold on the one part and purchased on the other as and for a right of way for a railroad." See Mid-State Oil Co. v. Ocean Shore R. Co. (Cal.) 270 P. 216. The deed plainly showed it was for a right of way. Such is the fact in the Laune Case, supra, the Orth v. Gregory Case, supra, and in the instant case. A railroad right of way deed is sui generis. It is a class of instruments by itself, and must receive interpretations that are characteristic of such deeds.

The sole base, intent, object, and purpose of the instant deed was for a right of way in accordance with the survey which had been made. When the railroad company made its survey across the tract of land in question, and recited the| survey in the deed, the owner then knew, as a matter of law, that the railroad company was entitled to acquire the tract of land described in the deed in question, and that the railroad company could acquire such tract of land either voluntarily or by compulsory process by condemnation through eminent domain proceedings.

As I view this record, in the light of many authorities, I am of the opinion the instrument in question did not vest in the railroad company a fee-simple title. The instrument granted a perpetual enjoyment of the use of the land, an interest in the land for the purpose for which it was obtained having all the attributes of a fee, but nevertheless an easement merely; as was said in the Atlanta, B. & A. Ry. Co. Case, supra, "an easement peculiar to a railroad. * * *"

In the case of Orth v. Gregory, 98 Okla. 229, 223 P. 385, it appears that S. W. Gregory, by warranty deed, conveyed a strip of land across a quarter section to the Wichita Falls & Northwestern Railroad Company for the use of a railroad right of way. The roadbed for the railroad was partly prepared on this strip of land, and thereafter Orth became the purchaser at sheriff's sale under foreclosure proceedings of the interest of the railroad company in said property. No attempt had been made by the railroad company or Orth to take any steps to build or construct the railroad systems since 1910. An action to quiet title to the strip of land against the foreclosure purchaser was begun by Gregory, the former owner of the land, on the ground that the railroad had abandoned the property for the purpose for

which it was acquired. The trial court found in favor of the plaintiff, Gregory, and quieted his title to said strip. Orth, the foreclosure purchaser, maintained that he acquired a fee in the property. The assignments of error for reversal were as follows:

"(1) Insufficient evidence to support the judgment of the court.

"(2) That he was a purchaser for value and that he would not be affected by the railway company abandoning its purpose to construct a railway line.

"(3) That he acquired the fee in the property."

This court said:

"The questions presented by the appeal are no longer open for discussion in this jurisdiction, as similar questions were before this court on appeal in the case of Santa Fe, L. & E. R. Co. v. Laune et al., 67 Okla. 75, 168 P. 1022, which disposed of the questions adversely to the defendant's contention. The title which the Wichita Falls Railroad Company received by its deed from the plaintiff was limited in use by the grantee to such purposes as are ordinarily and usually required in the conduct and operation of a railway carrier system. When the property so acquired is abandoned by the latter, the property reverts to the owner of the fee. The purchaser at a sheriff's sale in foreclosure proceedings against a railway company could not acquire any greater rights in the property than those held by the railroad company. The defendant, in purchasing the property at the sheriff's sale, took the benefits under the grant by Gregory as well as its burdens, i. e., to continue the construction and maintenance of the carrier system. If the defendant, after the purchase of the property at the sheriff's sale, abandoned its use for the construction and maintenance of a public carrier system, his rights in the property would be similar to those of the railway company in like status. Santa Fe, L. & E. R. Co. v. Laune, supra; Canadian River Railway Co. v. Wichita Falls & N. W. Ry. Co., 64 Okla. 62, 166 P. 163."

The court announced in the syllabus of the case the effect of a warranty deed obtained by a railway company to a strip of land for use as a railroad right of way, as follows:

"The interest conveyed by the instrument is limited by the use for which the land is acquired, and when that use is abandoned, the property reverts to the owner of the fee."

This is the correct holding to apply in the case involving right of way obtained by warranty deed from a railroad company. Technically speaking, "a right of way" is nothing more than "a right of passage over another person's ground." Webster's International Dictionary; Cincinnati, Indianapolis, St. Louis & Chicago Ry. Co. v. Geisel, 119 Ind. 77, 21 N. E. 470; Williams v. Western Union Co., 50 Wis. 71. The court did not consider section 2, article 22, of the state Constitution. That section was applicable in this case, for the reason that the deed in that case was executed in 1910, subsequent to the adoption of our state Constitution, but that section was not relevant in the Laune Case.

The Supreme Court of California, in the case of Coon v. Sonoma Magnesite Co., 189 P. 271, considered a deed where the grantor conveyed a tract saving and excepting therefrom a strip for a road to be built. The phrase "for a road" modified the whole clause, and that court held that such phrase indicated an intention to reserve an easement for a road rather than to except for a conveyance the fee for a strip. This court quoted with approval the rule announced in the Abercrombie Case. In considering the phrase "for a road" the court said:

"The phrase 'for a road' modifies the whole clause. Similarly, in construing contracts and deeds for railroad rights of way, such deeds are usually construed as giving a mere right of way, although the terms of the deed would be otherwise apt to convey a fee. Abercrombie v. Simmons, 71 Kan. 538, 81 P. 208, 1 L. R. A. (N. S.) 806, 114 Am. St. Rep. 516, note, 6 Ann. Cas. 243, note. It is true that there are cases holding that apt words for the conveyance of a fee will vest the fee in the railroad company, but the same reasoning which would justify a conclusion that unless it is exceptionally clear in the conveyance that a fee is intended, a right of way only is conveyed, would lead to the conclusion that the clause with reference to the 40-foot strip in the deed from Meeker to plaintiff hereby reserved a right of way for a road."

In the case of Laurel County v. Howard, 189 Ky. Rep. 221, the Court of Appeals of Kentucky considered a grant of right of way to a railroad company, and held that:

"In the construction of deeds, the purpose is to arrive at the intention of the parties, and where, upon a consideration of the entire instrument, it is clear the purpose of grantor was to convey merely an easement in the property, the deed will be so construed."

In speaking of the Abercrombie Case, the court said:

"Here the land acquired by the company was described as all the lands in a named township lying within 50 feet of the center line of the main track of the railroad and

containing 6.23 acres, more or less. In this well-reasoned opinion the court cites many authorities on the question in issue and holds that the company acquired merely a right of way and was not vested with an absolute title to the property; that the interest conveyed was limited by the use for which the land was acquired, and when that use is abandoned, the property should revert, and this though the deed was in form a general warranty. The foregoing are but few of the many decisions to the same effect."

This court also cited in support of this holding: Jones on Easements, sec. 211; Ballard v. L. & N. R. R. Co., 9 Ky. Law Rep. 523, 5 S. W. 484; East Alabama R. R. Co. v. Doe, 114 U. S. 340; Jones v. Van Bochove, 103 Mich. 98; Flaten v. Moorhead et al., 51 Minn. 518; Cincinnati, Indianapolis, St. L. & Chic. Ry. Co. v. Geisel, 119 Ind. 77; Robinson v. Miss. R. Co., etc., 59 Vt. 426. See, also, in reference to a conveyance passing an easement and not a fee-simple title in other jurisdictions: K. C. Southern Ry. Co. v. Sandlin (Mo. App.) 158 S. W. 857; Jones v. Van Bochove, 103 Mich. 98, 61 N. W. 342; Railway Company v. Geisel, 119 Ind. 77, 21 N. E. 470; Hill v. Railroad Co., 32 Vt. 74; Uhl v. Railway Co., 51 W. Va. 106, 41 S. E. 340; Ottumwa Railroad Co. v. McWilliams, 71 Iowa, 164, 32 N. W. 315; Sheppard v. Suffolk Railroad Co., 140 N. C. 391, 53 S. E. 137; South Penn. Oil Co. v. Calf Creek Oil & G. Co. (C. C.) 140 Fed. 507; Cincinnati Railroad Co. v. Wachter, 70 Ohio, 113, 70 N. E. 974.

The majority opinion cites the case of Oklahoma Ry. Co. v. Severns, 67 Okla. 206, 170 P. 216, in support of the theory that the right of way of the railway company was a fee-simple title to the land which had been acquired under the terms of the dedication. This case did relate to litigated title and reverter rights. No title was litigated in that case, and, in fact, there could be basis for no such litigation in an action of that character. That action was brought in the district court of Oklahoma county by the paving company against the city of Oklahoma City and the Oklahoma Railway Company for a writ of mandamus to require the city commissioners to reassess the private right of way of the railroad company along the center of Linwood boulevard to pay a proportionate part of the cost of said boulevard. There were only two questions involved, as appears from the opinion, to wit:

(1) Whether mandamus would lie.

(2) Whether a private right of way of railway company is subject to assessment to pay the cost of said boulevard.

It is contended in that case that the strip of land in question being the tract upon which the railway operated between the two driveways, and which had been dedicated by the owners to the street railway company, was subject to the assessment for street improvement. The Supreme Court in that case said:

"The fee title to the strip of land in question here appears to be in the railway company. In the dedication to the city this strip was referred to in the following language:

"Said strips of land are set aside for the exclusive use of and dedicated to the Oklahoma City and Suburban Railway, its successors and assigns, with like effect as though deeded and conveyed to said company in fee simple by separate deed."

It is to be observed that the Supreme Court of the United States, in passing on the question involved therein on appeal to that court, tacitly said:

"The fee title to a strip of land in question here appears to be in the railroad company."

There was no finality in that language, nor any adjudication of the title, as none had been presented, nor was such an adjudication essential or necessary in that case. In determining liability for assessment, it is not necessary to determine and litigate the title to the premises. The real subject of controversy is the assessment to be levied against the premises, and not the title, or the determination of the owner of the title. It has been held that the title to land acquired by dedication is the same as by condemnation. See Chouteau v. Mo. Pac. Ry. Co., 122 Mo. 375, 22 S. W. 458; Boyce v. Mo. Pac. Ry. Co., 168 Mo. 583, 68 S. W. 920; Kansas City So. Ry. Co. v. Sandlin, 173 Mo. App. 384, 158 S. W. 857. Under eminent domain proceedings for a right of way for railroad or highway purposes a mere easement is obtained.

In the case of M., K. & T. Ry. Co. v. City of Tulsa, 45 Okla. 382, 145 P. 398, the Missouri, Kansas & Texas Railway Company sued the city of Tulsa and Shelby-Downard Asphalt Company to enjoin the city from collecting an alleged illegal assessment sought to be imposed by the city on certain parcels of ground known as lots upon the official plat of said city, approved by the Secretary of the Interior, but which, at the time the assessment was sought to be restrained, were owned by plaintiff and

included in its right of way, for the cost of paving certain streets. The court in that case said that the lots, although included in plaintiff's right of way, were presumed to be benefited by the improvement. This court quotes from L. & N. Ry. Co. v. Barber Asphalt Paving Co., 116 Ky. 856, 76 S. W. 1097. In. that case the railroad company had been in possession of a strip of land upon which it built its roadbed, that is, its right of way, and had been in possession for a period of 50 years. That court said:

"It is therefore practically the owner of the land. If this strip of land was not occupied by the railroad company as a right of way, it would not be suggested that it was not subject to the special tax for street improvement. The purpose for which the lot is used cannot affect the question of the liability for the cost of street improvement. * * * 'Under the statute governing street improvement, a lot is any piece of land within the territory defined by the statute or the general council, where the territory to be assessed is not bounded by principal streets. The use or nonuse, or the character of the use, to which the parcel of land is put, does not determine the question whether it is or is not a lot. The strip of land used by the railroad company the day before it was appropriated by it as a right of way was a lot in the meaning of the statute, and to thus appropriate it cannot change its character.' "

In the City of Tulsa Case, the court, after construing the provisions of the charter of the city of Tulsa in reference to special improvements and the assessing of the cost of the construction against the owners of the property abutting upon the streets upon which improvements were to be constructed, and who were especially benefited thereby, said in the second paragraph of the syllabus, as follows:

"Assuming that certain lots owned by the railroad company and within its right of way are within the taxing district and are benefited by the improvement, held, that the company are the 'owners of the property abutting upon the street,' improved within the meaning of the charter."

The Supreme Court of the United States affirmed the Barber Case from Kentucky, Louisville & Nashville R. R. Co. v. Barber Asphalt Co., 197 U. S. 430. In that case Mr. Justice Holmes pointedly said that the railway company "did not object to the absence of the parties having any reversionary interest, but defended against any special assessment on the lot." The railway company specifically pleaded that its only interest in the lot was a right of way for its main roadbed, and that neither the right of way nor the lot would or could get any benefit from the improvement, and set up the plea that any special assessment would deny to it the equal protection of the laws, contrary to the Fourteenth Amendment to the Constitution of the United States. The law provided that the cost of the improvement shall be met at the exclusive cost of the adjoining owners to be equally apportioned according to the number of feet owned by them. The force of the plea of the railroad company, as stated by Mr. Justice Holmes, was "that the improvement will not benefit the lot because the lot is occupied for railroad purposes, and will continue so to be occupied. Compare Chicago, Burlington & Quincy R. R. v. Chicago, 166 U. S. 226, 257, 258." Mr. Justice Holmes also said: "We are compelled to declare that it does not go beyond the bounds set by the Fourteenth Amendment of the Constitution of the United States." In other words, this court approved the holding of the Kentucky court that the use or nonuse does not govern in reference to special improvement costs.

It is not a question of determining the title nor the ownership of the premises. The land is assessed, not its title, its use or nonuse. Liability and due process of law, which may be involved, are apart from the question of assessment of the benefits of the improvement against the premises.

Under section 4594, C. O. S. 1921, the lots, pieces, or parcels of land fronting and abutting on any improvement for which the property is chargeable, shall be charged with the cost thereof to the center of the block, etc., which cost shall be apportioned among the lots, etc., according to the ownership thereof, as the same appeared of record in the county, and according to the benefits to be assessed to each lot or parcel, etc.

This same thought is expressed in the case of Schaff v. Roberts (Kan.) 215 P. 447, wherein it was held that the railway may be assessed for a proportionate share of constructing hard-surfaced roads. In that case, which was decided by the Supreme Court of Kansas May 12, 1923, reaffirming the Abercrombie Case, it was argued by the railroad company that this right of way was but an easement. That court, after quoting paragraph 3 of the syllabus in the Abercrombie Case, said:

"Although it argues that its right of way is but an easement, it alleges in its petition that it 'is the legal and equitable owner of the property * * * 124.82 acres, constituting plaintiff's right of way which is owned for the purpose of operating a railroad

thereon.' We think, however, it is unimportant by what kind of title it holds the property. Any interest in the land, however small, is sufficient. Clark v. Lawrence, 75 Kan. 26, 88 P. 735. Plaintiff has been in possession of the land in question for many years. It is a part of a great railroad system. Its right of way may be said to be perpetual. It has been appropriated for all time to come. For all practical purposes it is the owner."

It seems almost axiomatic that the paving cases cannot support the views of the majority. They concern only the benefits to the premises. For all practical purposes the railroad company uses the premises as the owner, for it has its perpetual use which it has appropriated by reason of the use of its right of way, and it does not under any special improvement project escape the apportionment of the burden of special improvements. Such improvements when assessed against the owner of the right of way, that is, the railway company, do not go beyond the bounds of the Fourteenth Amendment. In other words, the premises must be considered apart from this particular use at the time.

In the case of C., O. & G. v. Mackey, 256 U. S. 531, which involved a special assessment for a street improvement levied by the city of Holdenville under Oklahoma Comp. Laws 1909, sec. 724, on railroad property consisting of a railroad right of way and station grounds abutting on an improved street, which the railroad company owned in fee, but subject to the right of reverter in the Creek Nation, in the event said property ceased to be used for railroad purposes, the Supreme Court of the United States held that the railroad company was not exempt from said special tax assessment. In defining the estate which the railroad company acquired by Act of Congress in 1888, Mr. Justice Brandeis said:

"The remaining contention is that the statutes of the state do not authorize assessment for betterments upon a railroad right of way and station grounds.

"The mere fact that there is a possible right of reverter in the Creek Nation does not preclude the railroad's interest from being subject to general taxation; see Baltimore Shipbuilding & Dry Dock Co. v. Baltimore, 195 U. S. 375, 49 L. Ed. 242, 25 Sup. Ct. Rep. 50; Maricopa & P. R. Co. v. Arizona, 156 U. S. 347, 352, 39 L. Ed. 447, 449, 15 Sup. Ct. Rep. 391. The railroad's interest, as stated in Rio Grande R. Co. v. Stringham, 239 U. S. 44, 47, 60 L. Ed. 136, 137, 36 Sup. Ct. Rep. 5, is 'neither a mere easement, nor a fee simple absolute, but a limited fee, made on an implied condition of reversion in the event that the company ceases to use or retain the land for the purposes for which it is granted, and carries with it the incidents and remedies usually attending the fee.'

"In effect the railroad is the absolute owner of the land. Its use is, and necessarily must be, exclusive. The betterment for which the assessment was levied is of a nature to enhance the value of that use. And it is the railroad, as distinguished from the Creek Nation, owner of a possible reversionary interest, to which the benefit from the improvement inures. For the railroad's use will continue indefinitely, while the specific improvement to be paid for can have but a short life.

"Street paving is a class of betterment to which the railroad right of way and station property is generally held to be subject. See Louisville & Nashville R. R. Co. v. Barber Asphalt Co., 197 U. S. 430; Branson v. Busch, 251 U. S. 182. The rule appears to have been accepted in Oklahoma. Compare Missouri, Kansas & Texas Ry. Co. v. Tulsa, 45 Okla. 382, Oklahoma Ry. Co. v. Severns Paving Co., 251 U. S. 104."

There is nothing ambiguous to such an interpretation of the law. The railroad's interest in the right of way was a limited fee, with an implied condition of reverter in the event of abandonment. The railroad, having in effect the right of an absolute owner of the land in the indefinite use of the land for its railroad purposes, must subject the right of way to special street improvements.

Under statutory proceedings in Kansas, a right of way condemned for the construction of a railroad is only an easement for the purpose for which it is taken (M. K. & N. W. R. Co. v. Schmuck, 69 Kan. 272, 76 P. 836); and in that state the court since the ruling announced in the Abercrombie Case has held consistently and tenaciously to the rule that a railroad company takes only the easement and not title in fee under a deed conveying to a railroad company lands for purposes of right of way and that the title reverts to the grantor upon abandonment of the railroad company.

Under the instant case, the deed shows on its face that the land was sold and received for the use as a right of way, just as it was held in the Abercrombie Case. In the case at bar we are not concerned with the question whether at the time of the execution of the instant deed the railroad company had the power to purchase lands in fee in accordance with our statutory provisions in force, being prior to our Constitution.

The constitutional provisions referred to in the majority opinion are not applicable. The deed in question was executed prior to statehood. However, section 6 of article 9 of our Constitution provides:

"Railroads heretofore constructed, or which may hereafter be constructed in this state, are hereby declared public highways. * * * "

See, also, St. Louis-San Francisco Ry. Co. v. McBride, 104 Okla. 216, 231 P. 284.

It is my view that the railroad company in the case at bar did not obtain a fee, but only an easement in the land for a right of way. In my opinion, the only inference which exists that the railroad company obtained a general warranty deed is to be found in the designation of the instrument, to wit, "warranty deed." Thereafter the presumption disappears. The words in the granting cause, to wit:

"A strip of land fifty feet in width off the north side of the northeast quarter (¼) etc. * * * The same being for a right of way for a railroad track as the survey thereof is now located, and said grantee agrees to construct two grade crossings over its track for the use of grantor and proper water ways under its track where there is heavy fills"

—were well-known terms, and as applied to railroad company had a well-defined meaning. The intent and purpose of the grant was plainly stated in the granting clause for a right of way for a railroad track, and in view of our Constitutional provision, section 6 of article 9, supra, though effective subsequent to the execution of the deed, same constitutes a public highway. See West Texas Utilities Co. v. Lee (Tex. Civ. App.) 26 S. W. (2d) 457.

There is no delusiveness in the thought that a grant for a right of way forcibly imprints itself in the instant deed. Effect must be given to the intent, object, and purpose of the whole instrument. The language in its entirety with all of its provisions, and not particular words, isolatedly found, must be considered. See O'Brien v. Miller, 168 U. S. 287; Walker v. I. C. R. R. Co., 215 Ill. 610; Downen v. Rayburn, 214 Ill. 342. The very exactness of the terms: "right of way," "railroad tracks," "survey thereof," "grade crossings over its track," "water ways under its tracks," "heavy fill," all of which terms appear in the granting clause, are inescapable, direct, positive, and specific designations that a right of way for a public highway was being conveyed for railroad purposes by reason of a franchise granted to a railroad company authorizing it to do business in this territory prior to the adoption of our Constitution, November 17, 1907, the deed in question being dated March 24, 1898.

I conclude that the instrument in question conveyed no fee in the land, but merely an easement, the right to use the land perpetually for railroad right of way purposes, an interest subservient to the title of the grantor, and which interest expired by its own force and limitation when the land was no longer used for the purposes of its grant, to wit, right of way purposes. This is an equitable action, and courts of equity construe instruments "with a large and liberal indulgence." O'Brien v. Miller, supra.

For these reasons, I dissent.

Supplemental Opinion on Rehearing.

BAYLESS, J. The plaintiff filed a petition for rehearing and brief in support thereof. Several briefs amicus curiae have been filed also. In all of these briefs is urged the importance and far-reaching effect of our opinion; the asserted novelty of our holding and its departure from the weight of authority; and, lastly, that we overlooked a certain portion of our state Constitution which inhibits the construction we adopted in our former opinion. For these reasons we have decided to make this addition to our previous opinion.

We quoted a portion of article 22, sec. 2, Constitution of Oklahoma, which reads as follows:

"* * * Nor shall any corporation doing business in this state buy, acquire, trade, or deal in real estate for any purpose except such as may be located in such towns and cities and as additions to such towns and cities, and further except such as shall be necessary and proper for carrying on the business for which it was chartered or licensed. * * *"

We did not quote more of this section because we did not deem it of controlling effect or importance. The portion, a proviso, omitted from our quotation and now cited and urged in the petition for rehearing reads:

"* * * And providing further, that no public service corporation shall hold any land, or the title thereof, in any way whatever in this state, except as the same shall be necessary for the transaction and operation of its business as such public service corporation."

It is urged that this provision is "prohibitive and a negative in character, not permissive or authoritative." To an extent

we agree with this construction, but not as applied by plaintiff.

The essential difference between the view of this article which we adopted and announced and that of plaintiff is upon the quality of the estate the public service corporation can acquire in the first instance. We construe our Constitution as direct authority for a corporation, private or public service, to acquire a fee-simple title to real estate in Oklahoma by purchase, limited, however, in quantity to that necessary to the purposes of its business. We construe the proviso not to be a limitation upon the quality of the estate purchased, but rather as a prohibition against the holding of the real estate, regardless of the quality of the title, beyond the period of the necessity for its holding in connection with the business of the corporation. We hold that the proviso intended to make plain, beyond the peradventure of doubt, in so far as a public service corporation is concerned, that it must part with its title and possession of real estate, whatever they may be, when the necessity for the holding thereof ceases. The public service corporation, in this instance, divested itself of its title to this property as soon as its usefulness for the corporate business terminated.

Plaintiff asserted, and asserts, that this article, and particularly the proviso, was intended to be a limitation upon the quality of the estate, and was to serve further to emphasize not only the limitation expressed in it but any limitation previously expressed. Plaintiff's argument in its final analysis is that a public service corporation can only acquire an easement; that, regardless of the character of the conveyance, the language thereof, or the intention of the parties thereto, there is and always will be a reversionary interest in the real estate taken and held by a corporation in this state; in other words, that a public service corporation can only acquire a determinable fee or estate.

We adhere to our previous construction of our Constitution, supra. We believe that if the framers of our Constitution had intended to limit public service corporations to determinable fees in real estate in this state, they would have used language apt and certain in its meaning. Other prohibitions, negations, and limitations in our Constitution are expressed with such certainty as to give no ground for ambiguity. We do not believe that it is reasonable to say in this instance that the intention failed of proper expression.

CULLISON, V. C. J., and SWINDALL, ANDREWS, OSBORN, and BUSBY, JJ., concur. McNEILL, J., dissents. RILEY, C. J., and WELCH, J., absent.